D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Fax: (510) 849-6141
vbaranetsky@revealnews.org

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and ANAYANSI DIAZ-CORTES, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, and UNITED STATES DEPARTMENT OF STATE, <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. The Center for Investigative Reporting ("CIR") and Anayansi Diaz-Cortes (collectively "Plaintiffs") seek processing and release of agency records requested from Defendants, United States Department of Justice ("DOJ") and United States Department of State ("State Department").

2. On June 9, 2020, Plaintiffs submitted a FOIA request seeking disclosure of records related to a request for legal assistance from the Mexican government regarding an investigation into the disappearance of Mexican students in 2015 to DOJ's Criminal Division, DOJ's Drug

Enforcement Administration ("DEA"), DOJ's Office of Executive United States Attorneys ("EOUSA"), and the State Department.

3. On June 24, 2020, the Criminal Division denied Plaintiffs' request on the grounds that mere acknowledgement of potentially responsive records would constitute an unwarranted invasion of personal privacy, citing 5 U.S.C. § 552(b)(7)(C). On July 7, 2020, Plaintiffs appealed the Criminal Division's denial of the request, explaining that where no cognizable privacy harm would result from disclosure and where the public interest is high, records should be disclosed. On July 9, 2020, DOJ affirmed the Criminal Division's denial, once again on the grounds that mere acknowledgement of potentially responsive records would constitute an unwarranted invasion of personal privacy under 5 U.S.C. § 552(b)(7)(C).

4. On July 30, 2020 DEA denied Plaintiffs' request on the grounds that mere acknowledgement of potentially responsive records would constitute an unwarranted invasion of personal privacy, citing 5 U.S.C. § 552(b)(7)(C). On August 13, 2020, Plaintiffs appealed DEA's denial of the request, explaining that where no cognizable privacy harm would result from disclosure and where the public interest is high, records should be disclosed. Plaintiffs have not received a final determination from DOJ with regards to this appeal. More than 20 business days have passed since Plaintiffs submitted the appeal on August 13, 2020.

5. Neither EOUSA nor State Deparment have issued a final determination with regards to the request. More than 20 business days have passed since Plaintiffs submitted the request to these agencies on June 9, 2020.

6. Plaintiffs have exhausted all administrative remedies.

7. The requested records are of significant public interest because they relate directly to a forced disappearance of 43 student teachers in Mexico, an incident which has been widely covered in the media and caused international outcry.

8. The requested records are of particular interest to Plaintiffs because, as members of the news media, they have an abiding interest in informing the public about matters of serious concern. Plaintiffs plan to publish a story about the disappearance to commemorate its seventh anniversary.

9. Plaintiffs now ask the Court for an injunction requiring Defendants to promptly release the withheld records.

## JURISDICTION

10. The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and (a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1436, and 5 U.S.C. §§ 701–706.

## VENUE AND INTRADISTRICT ASSIGNMENT

11. Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402. Plaintiff CIR has its principal place of business in this district.

12. Assignment to the Oakland Division is proper pursuant to Local Rules 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in Alameda County, where Plaintiff CIR's principal place of business is located and most actions in this case occurred.

## PARTIES

13. Plaintiff CIR publishes *Reveal*, an online news site, at revealnews.org, and *Reveal*, a weekly public radio show with approximately 3 million listeners per week, as well as documentaries and other media. Founded in 1977 as the first non-profit investigative news organization in the country, CIR has received multiple awards for its reporting. CIR is a non-profit established under the laws of the State of California, with its primary office in Emeryville, California.

14. Plaintiff Anayansi Diaz-Cortes is a staff reporter for *Reveal* and an employee of CIR. *Anayansi Diaz-Cortes*, REVEAL, https://www.revealnews.org/author/anayansi-diaz-cortes/.

15. Defendant DOJ is a department of the executive branch of the United States government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DOJ has its headquarters in Washington, D.C., and regional offices all over the country, including in San Francisco, CA.

16. Defendant State Department is a department of the executive branch of the United States government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). State Department has its headquarters in Washington, D.C.

## FACTUAL BACKGROUND

17. This case concerns an investigation into the activities of the Mexican drug cartel,

Guerreros Unidos, which has been associated with the forced disappearance of 43 Mexican students from a rural teaching college in the town of Ayotzinapa in Guerrero, Mexico.

18. On September 26, 2014, Guerrero police stopped three buses of students bound for the city of Iguala, and surrounded them before opening fire. Ryan Devereaux, *Ghosts of Iguala*, THE INTERCEPT, May 4, 2015, https://theintercept.com/2015/05/04/how-43-students-disappeared-in-mexico-part-1/. The shootout continued throughout the night, and ultimately six people—including bystanders—were killed, and 43 of the students were allegedly taken into police custody, never to be heard from again. *Id.* The Mexican government has asserted that it had conclusively determined that the missing students were turned over to Guerrerors Unidos members and killed, and that their bodies were burned in a dump near Iguala, but independent experts, witnesses, and the families of the students dispute this account. *Id.*

19. The search for the missing students in Mexico led to the discovery of 28 bodies in mass graves, "buried in apparently separate circumstances" from the students' disappearance. Cora Currier & Jesse Franzblau, *Mexican Authorities Implicated in Violence, but U.S. Security Aid Still Flows*, THE INTERCEPT, May 8, 2015, https://theintercept.com/2015/05/08/ayotzinapa-mexico-u-s-security-aid-keeps-flowing/. This led the U.S. Army Northern command to state in an internal report "that the preponderance of mass graves raised 'alarming questions about the widespread nature of cartel violence in the region and the level of government complicity.'" *Id.* As of August 2020, the bodies of the students have not been conclusively identified.

20. In December 2014, several prominent members of Guerrerors Unidos—including Pablo Vega, alleged to be the leader of the Guerreros Unidos' Chicago operations—were arrested in Chicago for drug-trafficking and charged with several federal crimes in the Northern District of Illinois. Mary Wisniewski, *Alleged Head of Chicago Branch of Mexican Drug Cartel Arrested*, Reuters, Dec. 10, 2014, https://www.reuters.com/article/us-usa-mexico-drugs/alleged-head-of-chicago-branch-of-mexican-drug-cartel-arrested-idUSKBN0JO2CU20141210.

21. Defendants in *U.S. v. Vega* were alleged to have "used commercial passenger buses to conceal and transport drugs from Mexico to Chicago," and it has been widely speculated that this operation was linked to the disappearance of the students in Iguala, who were on commercial buses

when the ambush began.  Maureen Meyer, *Ayotzinapa Fact Sheet: Investigating the Enforced Disappearance of 43 Students in Mexico*, Washington Office on Latin America, Feb. 24, 2016, https://www.wola.org/analysis/ayotzinapa-fact-sheet-investigating-the-enforced-disappearance-of-43-students-in-mexico/.

22.  As part of the Mexican government's investigation into the disappearance of the students in Iguala, it requested information from the United States pursuant to the United States-Mexico Mutual Legal Assistance Treaty ("MLAT")[1] collected by U.S. authorities during the *U.S. v. Vega* investigation.  Maureen Meyer, *Ayotzinapa Fact Sheet: Investigating the Enforced Disappearance of 43 Students in Mexico*, Washington Office on Latin America, Feb. 24, 2016, https://www.wola.org/analysis/ayotzinapa-fact-sheet-investigating-the-enforced-disappearance-of-43-students-in-mexico/.

23.  Through the MLAT, in February 2015, the Mexican "Attorney General's Office . . . request[ed] that the Department of Justice share information about the Chicago investigation and incorporate it into the investigation of the students' disappearance." *Id.*  It is believed that "[t]he Chicago case could provide insight into how the Guerreros Unidos trafficked heroin from Iguala to Chicago, the bus companies they used, and the owners of said companies." *Id.*  U.S. authorities also obtained "court-authorized interceptions of the communications from various cell phones and Blackberry devices used by several individuals associated with Guerreros Unidos, including [Vega]." *Id.*

24.  The Mexican government's conclusions following its investigation of the disappearance—that local police in Iguala and Guerreros Unidos members were responsible—has been criticized by "journalists and human-rights investigators" as contrary to observations by witnesses and independent analysis of the evidence.  Frank Main, *Killing of 43 Students Bad for*

---

[1] The U.S.-Mexico MLAT, signed in December 1987, establishes a formal information sharing procedure between the two nations "in order to provide mutual legal assistance in criminal matters."  Treaty on Cooperation between the United States of America and the United Mexican States for Mutual Legal Assistance, Signed at Mexico City on December 9, 1987, S. Treaty Doc. No. 100-13, art. 1, ¶ 1.  Specifically, the assistance concerns "prevention, investigation and prosecution of crimes . . . within the . . . jurisdiction of the requesting Party . . . in connection with ancillary proceedings . . . related to the criminal acts in question." *Id.*

*Business, Chicago Cartel Boss Said*, CHI. SUN-TIMES, Apr. 26, 2018, https://chicago.suntimes.com/2018/4/26/18392928/killings-of-43-mexican-students-bad-for-business-chicago-cartel-boss-said.

25. Ms. Diaz-Cortes, on behalf of CIR, requested records about these individuals so that she may report on a matter of public interest. The interest in this topic remains especially voracious. Marina Franco, *Five Years Ago, 43 Students Vanished. The Mystery, and the Pain, Remain*, N.Y. TIMES, Sept. 26, 2019, https://www.nytimes.com/2019/09/26/world/americas/Ayotzinapa-mexico-students-anniversary.html (article commemorating five-year anniversary of disappearance). DOJ itself acknowledged this public interest by issuing a press release when a complaint was filed against members of Guerreros Unidos for drug-trafficking charges which many suspect are related to the students' disappearance. Press Release, U.S. Attorney's Office for N. Dist. Ill., *Eight Defendants Charged with Distributing Heroin in Chicago Area on Behalf of Guerrero Unidos Mexican Drug Cartel* (Dec. 10, 2014), https://www.justice.gov/usao-ndil/pr/eight-defendants-charged-distributing-heroin-chicago-area- behalf-guerrero-unidos .

26. As part of her work for CIR, Ms. Diaz-Cortes reports on political affairs in the United States and Latin America. *See, e.g.*, Aaron Glantz & Anayasi Diaz-Cortes, *How Donald Trump took down the Robert Mueller of Latin America*, Reveal, Sept. 4, 2020, https://www.revealnews.org/article/how-donald-trump-took-down-the-robert-mueller-of-latin-america/. She requests these records in furtherance of her efforts to report on the students' disappearance to commemorate the seventh anniversary of the disappearance and inform the public about developments in the U.S. and Mexican investigations into the case.

## PROCEDURAL BACKGROUND

### Criminal Division Request

27. On June 9, 2020, Ms. Diaz-Cortes submitted a FOIA request to DOJ Criminal Division on behalf of CIR seeking records related to a request for assistance from the Mexican government regarding the criminal case, *United States v. Pablo Vega Cuevas et al.* ("the Criminal

Division Request"). A true and correct copy of the Request is attached as Exhibit A. In the Criminal DivisionRequest, Ms. Diaz-Cortes explained that she sought records related to a request for assistance from the Mexican government "by Mutual Legal Assistance Treaty (MLAT), letter rogatory, or some other diplomatic communication[.]" Ex. A. Ms. Diaz-Cortes also specified that she sought "documents and communications created during the period of March 1, 2015, to April 1, 2018." *Id.*

28. On June 24, 2020, Ms. Diaz-Cortes received a denial of the Criminal Division Request from DOJ Criminal Division ("the Criminal Division Denial"). A true and correct copy of the Criminal Division Denial is attached as Exhibit B. In this denial, DOJ Criminal Division provided what is known as a *Glomar* response, stating that "[t]o the extent that non-public responsive records exist, without consent, proof of death, or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy." Ex. B. (citing 5 U.S.C. § 552(b)(7)(C)). DOJ added that "[b]ecause any non-public [responsive] records . . . would be categorically exempt from disclosure, this Office is not required to conduct a search[.]" Ex. B. Finally, DOJ reiterated that this "standard notification . . . should not be taken as an indication that excluded records do, or do not, exist" and provided instructions for how to appeal the denial as required by FOIA. *Id.*

29. On July 7, 2020, Plaintiffs submitted an appeal letter ("the Criminal Division Appeal") to DOJ's Office of Information Policy ("OIP"). A true and correct copy of the Appeal is attached as Exhibit C. In the Criminal Division Appeal, Plaintiffs argued that DOJ's *Glomar* response is inappropriate for two distinct reasons. Ex. C. First, Plaintiffs explained that where no cognizable privacy harms would result from disclosure, 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)") cannot be invoked to refuse to perform a search or disclose responsive records. *Id.* Second, Plaintiffs stated that where the public interest is high, as is the case here, case law weighs in favor of disclosure. *Id.*

30. On July 9, 2020, Plaintiffs received a denial of the appeal from OIP ("Criminal Division Appeal Denial"). A true and correct copy of the Criminal Division Appeal Denial is attached as Exhibit D. In the Criminal Division Appeal Denial, OIP did not respond to Plaintiffs'

arguments about the immense public interest in these records, but nonetheless "affirm[ed] the Criminal Division's" denial under Exemption 7(C). Ex. D. OIP further stated that any potentially responsive records would be "categorically exempt" as law enforcement records concerning an individual, and concurred with the Criminal Division's assertion of Exemption 7(C) and refusal to perform a search. *Id.*

31. Having exhausted all administrative remedies, Plaintiffs now seek injunctive relief.

**Drug Enforcement Administration Request**

32. On June 9, 2020, Ms. Diaz-Cortes submitted a FOIA request to DEA on behalf of CIR seeking records related to a request for assistance from the Mexican government regarding the criminal case, *United States v. Pablo Vega Cuevas et al.* ("the DEA Request"). A true and correct copy of the Request is attached as Exhibit E. In the DEA Request, Ms. Diaz-Cortes explained that she sought records related to a request for assistance from the Mexican government "by Mutual Legal Assistance Treaty (MLAT), letter rogatory, or some other diplomatic communication[.]" Ex. E. Ms. Diaz-Cortes also specified that she sought "documents and communications created during the period of March 1, 2015, to April 1, 2018." *Id.*

33. On July 30, 2020, Ms. Diaz-Cortes received a denial of the DEA Request from DEA ("DEA Denial"). A true and correct copy of the DEA Denial is attached as Exhibit F. In this denial, DEA provided what is known as a *Glomar* response, stating that "[t]o the extent that non-public responsive records exist, without consent, proof of death, or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy." Ex. F (citing 5 U.S.C. § 552(b)(7)(C)). DEA added that "[b]ecause any non-public [responsive] records . . . would be categorically exempt from disclosure, this office is not required to conduct a search[.]" Ex. F. Finally, DEA reiterated that this "standard notification . . . should not be taken as an indication that excluded records do, or do not, exist" and provided instructions for how to appeal the denial as required by FOIA. *Id.*

34. On August 13, 2020, Plaintiffs submitted an appeal letter ("the DEA Appeal") to OIP. A true and correct copy of the DEA Appeal is attached as Exhibit G. In the DEA Appeal, Plaintiffs

argued that DOJ's *Glomar* response is inappropriate for two distinct reasons. Ex. G.  First, Plaintiffs explained that where no cognizable privacy harms would result from disclosure, Exemption 7(C) cannot be invoked to refuse to perform a search or disclose responsive records. *Id.* Second, Plaintiffs stated that where the public interest is high, as is the case here, case law weighs in favor of disclosure. *Id.*

35. To date, Plaintiffs have not received a final determination from OIP as to the DEA Appeal.  Defendant DOJ has failed to comply with FOIA, 5 U.S.C. § 552(a)(6)(A)(ii), which requires that an agency make determinations with respect to an appeal within 20 business days of receipt.

36. Having exhausted all administrative remedies, Plaintiffs now seek administrative relief.

### Executive Office for United States Attorneys Request

37. On June 9, 2020, Ms. Diaz-Cortes submitted a FOIA request to EOUSA on behalf of CIR seeking records related to a request for assistance from the Mexican government regarding the criminal case, *United States v. Pablo Vega Cuevas et al.* ("the EOUSA Request").  A true and correct copy of the EOUSA Request is attached as Exhibit H.  In the EOUSA Request, Ms. Diaz-Cortes explained that she sought records related to a request for assistance from the Mexican government "by Mutual Legal Assistance Treaty (MLAT), letter rogatory, or some other diplomatic communication[.]"  Ex. H.  Ms. Diaz-Cortes also specified that she sought "documents and communications created during the period of March 1, 2015, to April 1, 2018."  *Id.*

38. To date, Plaintiffs have not received a final determination from DOJ as to the EOUSA Request.  Defendant DOJ has failed to comply with FOIA, 5 U.S.C. § 552(a)(6)(A)(i), which requires that an agency make determinations with respect to a request within 20 business days of receipt.

39. Having exhausted all administrative remedies, Plaintiffs now seek injunctive relief.

### United States Department of State Request

40. On June 9, 2020, Ms. Diaz-Cortes submitted a FOIA request to the State Department on behalf of CIR seeking records related to a request for assistance from the Mexican government regarding the criminal case, *United States v. Pablo Vega Cuevas et al.* ("the State Department

Request"). A true and correct copy of the State Department Request is attached as Exhibit I. In the State Department Request, Ms. Diaz-Cortes explained that she sought records related to a request for assistance from the Mexican government "by Mutual Legal Assistance Treaty (MLAT), letter rogatory, or some other diplomatic communication[.]" Ex. I. Ms. Diaz-Cortes also specified that she sought "documents and communications created during the period of March 1, 2015, to April 1, 2018." *Id.*

41. To date, Plaintiffs have not received a final determination from State Department Request. Defendant State Department has failed to comply with FOIA, 5 U.S.C. § 552(a)(6)(A)(i), which requires that an agency make determinations with respect to a request within 20 business days of receipt.

42. Having exhausted all administrative remedies, Plaintiffs now seek injunctive relief.

## CAUSE OF ACTION

### Violation of Freedom of Information Act

43. Plaintiffs repeat and reallege paragraphs 1-42.

44. Defendants DOJ and State Department are subject to FOIA and must therefore release in response to a FOIA request any disclosable records in their possession and provide a lawful reason for withholding any materials as to which it is claiming an exemption.

45. Defendant DOJ has failed to issue final determinations as to the EOUSA Request and DEA Appeal within the 20 business days required by FOIA. *See* 5 U.S.C. §§ 552(a)(6)(A)(i)-(ii). Accordingly, Plaintiffs are deemed to have exhausted their administrative remedies under FOIA.

46. Defendant State Department has failed to issue a final determination as to the State Department Request within the 20 business days required by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)(i).

47. Plaintiffs are entitled to declaratory and injunctive relief compelling the expedited release and disclosure of the requested records.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs prays that this Court:

1. Declare that Defendants DOJ and State Department violated FOIA by failing to

provide requested records in response to Plaintiffs' requests and failing to notify Plaintiffs of final determinations as to the DEA Appeal, EOUSA Request, and State Department Request within the statutory time limit;

    2.    Declare that the documents sought by the requests, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

    3.    Order Defendants DOJ and State Department to expeditiously provide the requested documents to Plaintiffs within 20 business days of the Court's order;

    4.    Award Plaintiffs the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA; and

    5.    Grant Plaintiffs such other and further relief as this Court may deem just and proper.

DATED:  September 23, 2020

Respectfully submitted,

By:  s/ D. Victoria Baranetsky
D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Fax: (510) 849-6141
Email: vbaranetsky@revealnews.org

Attorney for Plaintiffs

*In compliance with Civil Local Rule 5-1(i)(3), the filer of this document attests under penalty of perjury that all Attorneys for Plaintiffs have concurred in the filing of this document.*