# Exhibit A



from The Center for Investigative Reporting

Tuesday, June 9, 2020

Amanda Marchand Jones, Chief
FOIA/PA Unit
Criminal Division
Department of Justice
Suite 1127
1301 New York Ave, NW
Washington, DC 20530-0001

Dear Ms. Jones:

This is a request under the Freedom of Information Act. I am a reporter with The Center for Investigative Reporting (henceforth "CIR") seeking all records related in whole or in part to a request for assistance from the Mexican government - whether by the Mutual Legal Assistance Treaty (MLAT), letter rogatory, or some other diplomatic communication - regarding the criminal case "United States of America v. Pablo Vega Cuevas et al." (14 CR 705).

We seek documents and communications created during the period of March 1, 2015, to April 1, 2018, that pertain to Mexico's interest in accessing information obtained in the course of the Vega investigation. Responsive records should include bilateral communications between the Mexican and United States governments as well as any US inter-agency communications following Mexico's request for assistance. The types of documents requested include, but are not limited to, emails, letters, diplomatic exchanges, memoranda, telephone transcripts, meeting minutes, talking points, reports, legal records, and intelligence information. Please omit from your search and review all copies of press and media reports as well as all press statements and press releases.

We do <u>not</u> seek information collected by US agents during their investigation of the Vega case (whether or not that was provided to the Mexican government): sensitive evidence, photographs, results of wiretaps, private data about the individuals involved, or any other materials gathered for law enforcement purposes. Rather, this FOIA request concerns the correspondence between Mexico and the United States about whether Mexico could have access to the material for its own, internal law enforcement purposes.



1400 65th, Suite 200  Emeryville, CA 94608
PHONE 510  809  3160                                    TWITTER @reveal
               WEB revealnews.org



from The Center for Investigative Reporting

I am also requesting expedited processing on this request. 5 U.S.C. § 552(a)(6)(E)(v)(II); see also Al-Fayed v. CIA, 254 F.3d 300, 306 (D.C. Cir. 2001).

First, there is an urgency to inform the public about activities of the United States federal government regarding the investigation of the Ayotzinapa case. On March 18, 2020, the Mexican Attorney General's office issued arrest warrants against six former Mexican government officials on charges including torture, forced disappearance, and judicial misconduct. Information concerning what knowledge representatives of the United States had of the investigation into Ayotzinapa and the alleged crimes of Mexican government officials at the time, as well as what actions US agencies took in response, are a matter of exceptional, current media interest.

Second, there is a compelling need for information related to this case as the records are of acute interest to the mothers and fathers of the 43 disappeared Ayotzinapa students. Given Mexico's failure to solve the case and find their children, the families are desperate for any information that could help shed additional light on what happened. Not to do so in the most expeditious manner possible would be to contribute to the continuing torment suffered by victims' parents.

I certify that the statements contained in this letter regarding the alleged activity and public concern are true and correct to the best of my knowledge. Any information obtained from this request will be used for the public's interest in news stories written for CIR.

Please don't hesitate to contact me with any questions you may have.

Sincerely,

Anayansi Diaz-Cortes | Celu: 212.729.9184  | adiazcortes@revealnews.org
Reporter and Producer, Reveal from the Center for Investigative Reporting

1400 65th, Suite 200  Emeryville, CA 94608
PHONE 510  809  3160                    TWITTER @reveal
WEB revealnews.org

# Exhibit B



**U.S. Department of Justice**

Criminal Division

---

*Office of Enforcement Operations*                                      *Washington, D.C. 20530*

**VIA Electronic Mail**                                      June 24, 2020

Ms. Anayansi Diaz-Cortes
Reveal from The Center for Investigative
 Reporting
Suite 200
1400 65th                                      Request No. CRM-301214312
Emeryville, CA  94605                          Subject: <u>U.S. v. Vega Cuevas et al</u>, No. 14-
adiazcortes@revealnews.org                          CR705 (N.D. Ill.)

Dear Ms. Diaz-Cortes:

    The Criminal Division acknowledges receipt of your Freedom of Information Act request
dated June 9, 2020. Your request was received in this Office on June 9, 2020. In that request, you
asked for access to records concerning the above-mentioned subject. Your request has been
assigned file number CRM-301214312. You should refer to this number in any future
correspondence with this Office.

    To the extent that non-public responsive records exist, without consent, proof of death, or
an overriding public interest, disclosure of law enforcement records concerning an individual
could reasonably be expected to constitute an unwarranted invasion of personal privacy. <u>See</u>
5 U.S.C. § 552(b)(7)(C). Because any non-public records responsive to your request would be
categorically exempt from disclosure, this Office is not required to conduct a search for the
requested records.

    As to your request for expedited processing, your request is moot as this response has
been issued within ten days of receipt of the request.

    For your information, Congress excluded three discrete categories of law enforcement
and national security records from the requirements of the FOIA. <u>See</u> 5 U.S.C. § 552(c). This
response is limited to those records that are subject to the requirements of the FOIA. This is a
standard notification that is given to all requesters and should not be taken as an indication that
excluded records do, or do not, exist.

    You may contact our FOIA Public Liaison at the (202) 616-0307 for any further
assistance and to discuss any aspect of your request. Additionally, you may contact the Office of
Government Information Services (OGIS) at the National Archives and Records Administration
to inquire about the FOIA mediation services they offer. The contact information for OGIS is as
follows: Office of Government Information Services, National Archives and Records
Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001, e-mail at

2

ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

     If you are not satisfied with the Criminal Division's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account on the following website: https://foiastar.doj.gov.  Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

*Amanda Marchand Jones*

Amanda Marchand Jones
Chief
FOIA/PA Unit

# Exhibit C



Mr. Bobak Talebian
Director
Office of Information Policy
United States Department of Justice, Sixth Floor
441 G Street, NW
Washington, D.C. 20001

July 7, 2020

**VIA FOIA STAR PORTAL AND USPS**

**FOIA APPEAL Re: Freedom of Information Act Request No. CRM-301214312**

To Whom it May Concern:

I write on behalf of The Center for Investigative Reporting ("CIR") and its reporter, Ms. Anayansi Diaz-Cortes, to appeal, pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), a denial of a request sent in June 2020 for documents relating to the criminal case, *United States v. Pablo Vega Cuevas*, No. 1:14-cr-00705 (N.D. Ill. Dec. 8, 2014).

The United States Department of Justice ("DOJ") incorrectly provides a *Glomar* response and asserts that it need not perform a search for the requested records because confirming their existence could constitute an unwarranted invasion of personal privacy, citing 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"). Because no cognizable privacy harm exists in this case, DOJ has improperly issued a *Glomar* response based on Exemption 7(C).  Moreover, the overwhelming public interest in the subject matter of these records overrides any possible privacy concerns. Consequently, the DOJ has violated its obligations under FOIA.

## I.      Factual Background

This case concerns an investigation into activities of the Mexico-based gang, Guerreros Unidos, who have been associated with the forced disappearance of 43 Mexican students from a rural teaching college in the town of Ayotzinapa in Guerrero, Mexico.  On September 26, 2014, Guerrero police stopped three buses of students bound for the city of Iguala, and surrounded them before opening fire.  Ryan Devereaux, *Ghosts of Iguala*, THE INTERCEPT, May 4, 2015, https://theintercept.com/2015/05/04/how-43-students-disappeared-in-mexico-part-1/.  The shootout continued throughout the night, and ultimately six people—including bystanders—were killed, and 43 of the students were allegedly taken into police custody, never to be heard from again.  *Id.*  The Mexican government has asserted that it had conclusively determined that the

missing students were turned over to Guerreros Unidos members and killed, and that their bodies were burned in a dump near Iguala, but independent experts, witnesses, and the families of the students dispute this account. *Id.*

In December of 2014, several prominent members of Guerreros Unidos—including Pablo Vega, alleged to be the leader of the Guerreros Unidos' Chicago operations—were arrested in Chicago for drug-trafficking and charged with several federal crimes in the Northern District of Illinois. Mary Wisniewski, *Alleged Head of Chicago Branch of Mexican Drug Cartel Arrested*, REUTERS, Dec. 10, 2014, https://www.reuters.com/article/us-usa-mexico-drugs/alleged-head-of-chicago-branch-of-mexican-drug-cartel-arrested-idUSKBN0JO2CU20141210. Defendants in the case were alleged to have "used commercial passenger buses to conceal and transport drugs from Mexico to Chicago," and it has been widely speculated that this operation was linked to the disappearance of the students in Iguala, who were on commercial buses when the ambush began. Maureen Meyer, *Ayotzinapa Fact Sheet: Investigating the Enforced Disappearance of 43 Students in Mexico*, WASHINGTON OFFICE ON LATIN AMERICA, Feb. 24, 2016, https://www.wola.org/analysis/ayotzinapa-fact-sheet-investigating-the-enforced-disappearance-of-43-students-in-mexico/.

Due in part to the association between Guerreros Unidos and the disappearance of the students in Iguala, the criminal case against Vega and his co-defendants has received substantial public attention, which the DOJ acknowledged by issuing a press release about the case. Press Release, U.S. Attorney's Office for N. Dist. Ill., *Eight Defendants Charged with Distributing Heroin in Chicago Area on Behalf of Guerrero Unidos Mexican Drug Cartel* (Dec. 10, 2014), https://www.justice.gov/usao-ndil/pr/eight-defendants-charged-distributing-heroin-chicago-area-behalf-guerrero-unidos. The case is currently concluding, with most of the defendants having already been sentenced. *See United States v. Pablo Vega Cuevas*, No. 1:14-cr-00705.

As part of the Mexican government's investigation into the disappearance of the students in Iguala, it requested information pursuant to the U.S.-Mexico Mutual Legal Assistance Treaty ("MLAT") collected by U.S. authorities during the investigation for *U.S. v. Vega*. Maureen Meyer, *Ayotzinapa Fact Sheet: Investigating the Enforced Disappearance of 43 Students in Mexico*, WASHINGTON OFFICE ON LATIN AMERICA, Feb. 24, 2016, https://www.wola.org/analysis/ayotzinapa-fact-sheet-investigating-the-enforced-disappearance-of-43-students-in-mexico/. The Mexican government's conclusions—that local government officials in Iguala and Guerreros Unidos were responsible—has been criticized by "journalists and human-rights investigators" as contrary to observations by witnesses and independent analysis of the evidence. Frank Main, *Killing of 43 Students Bad for Business, Chicago Cartel Boss Said*, CHI. SUN-TIMES, Apr. 26, 2018, https://chicago.suntimes.com/2018/4/26/18392928/killings-of-43-mexican-students-bad-for-business-chicago-cartel-boss-said.

## II.    Procedural History

On June 9, 2020, Ms. Diaz-Cortes sent, on behalf of CIR, a FOIA request to the DOJ Criminal Division seeking records related to a request for assistance from the Mexican

1400 65th, Suite 200 Emeryville, CA 94608
PHONE 510 809 3160 ▮▮▮▮▮▮▮▮  TWITTER @reveal
WEB revealnews.org

government regarding *U.S. v. Cuevas* ("the Request").  A true and correct copy of the Request is attached as Exhibit A.  Ms. Diaz-Cortes requested "documents and communications . . . that pertain to Mexico's interest in accessing information obtained in the course of the Vega investiations," and specifically, "all records related in whole or in part to a request for assistance from the Mexican government – whether by the . . . MLAT[], letter rogatory, or some other diplomatic communication – regarding . . . [*U.S. v. Vega*]."  Ex. A.

In the Request, Ms. Diaz-Cortes specified that she sought only records "created during the period of March 1, 2015 to April 1, 2018."  *Id.*  Ms. Diaz-Cortes explained that responsive records might include "emails, letters, diplomatic exchanges, memoranda, telephone transcripts, meeting minutes, talking points, reports, legal records, and intelligence information."  *Id.* Importantly, Ms. Diaz-Cortes also described what she was *not* seeking in the Request: "sensitive evidence, photographs, results of wiretaps, [or] private data about the individuals involved."  *Id.* Ms. Diaz-Cortes also requested expedited processing, explaining "there is an urgency to inform the public about activities of the United States federal government regarding the investigation of the Ayotzinapa case."  *Id.*

On June 24, 2020, Ms. Diaz-Cortes received a denial of the Request from the DOJ's Criminal Division ("the Denial").  A true and correct copy of the Denial is attached as Exhibit B. The Denial stated that "[t]o the extent that non-public responsive records exist, without consent, proof of death, or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy."  Ex. B.  It further stated that "[b]ecause any non-public records responsive to your request would be categorically exempt from disclosure, this Office is not required to conduct a search for the requested records."  *Id.*  Finally, the Denial provided information on how to appeal the determination, *id.*, as required by 5 U.S.C. § 552(a)(6)(A).  CIR now appeals DOJ's denial of the Request under FOIA.

## III.    Argument

The DOJ has violated its obligations under FOIA by improperly issuing a *Glomar* Response and refusing to search for or disclose responsive records.  First, a *Glomar* response based on Exemption 7(C) is inappropriate where no cognizable privacy harm will result from disclosure.  Because Ms. Diaz-Cortes specifically excluded private information on individuals from the scope of the Request, *see* Ex. A, no cognizable privacy harm could result from disclosure.  Second, the overwhelming public interest in these records, as described in the Request, overrides any negligible privacy concerns.  The records concern both a high-profile criminal investigation and the role of the U.S. and Mexican governments in investigating the case, covered extensively by the media.

### A.    A *Glomar* Response Based on Exemption 7(C) is Inappropriate Where No Cognizable Privacy Harm Will Result from Disclosure.

A government agency may deny a FOIA request by stating that the agency cannot confirm or deny the very existence of the records—also known as a *Glomar* response —only "in

that rare situation when [confirming or denying] would 'cause harm cognizable under a FOIA exception.'" *Bartko v. Dep't of Justice*, 898 F.3d 51, 63–64 (D.C. Cir. 2018) (quoting *Roth v. Dep't of Justice*, 642 F.3d 1161, 1178 (D.C. Cir. 2011)). *See also Pickard v. Dep't of Justice*, 653 F.3d 782, 785–86 (9th Cir. 2011). The agency also "bears the burden of showing that the fact of whether it possesses requested records is protected from disclosure under a FOIA exemption." *De Sousa v. Cent. Intelligence Agency,* 239 F. Supp. 3d 179, 190 (D.D.C. 2017).

Here, DOJ cannot meet its burden. Ms. Diaz-Cortes *specifically stated* that she was not seeking private information about individuals. Ex. A. ("We do not seek . . . private data about the individuals involved) (emphasis in original). Given this, the DOJ cannot earnestly claim that disclosure, and even confirming the very *existence* of responsive records, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Ex. B. More practically, it is unclear how disclosure of records that contain no personal data about individuals could be invasive of personal privacy, as DOJ alleges in the Denial. *See id.*

Additionally, it is well established in FOIA case law that there is a diminished privacy interest in publicly available information. *Am. Civ. Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 12 (D.C. Cir. 2011); *see also Cottone v. Reno*, 195 F.3d 550, 553-54 (D.C. Cir. 1999). The MLAT request from the Mexican government for records related to the forced disappearance was covered comprehensively in the media, *see, e.g.*, Maureen Meyer, *Ayotzinapa Fact Sheet: Investigating the Enforced Disappearance of 43 Students in Mexico*, WASHINGTON OFFICE ON LATIN AMERICA, Feb. 24, 2016, https://www.wola.org/analysis/ayotzinapa-fact-sheet-investigating-the-enforced-disappearance-of-43-students-in-mexico/; Frank Main, *Killing of 43 Students Bad for Business, Chicago Cartel Boss Said*, CHI. SUN-TIMES, Apr. 26, 2018, https://chicago.suntimes.com/2018/4/26/18392928/killings-of-43-mexican-students-bad-for-business-chicago-cartel-boss-said, and leaks to the Mexican press have revealed much of the substantive information shared via the MLAT request. *Id.* (reporting that Vega stated the forced disappearance was "bad for business" in a BlackBerry message disclosed to the Mexican government pursuant to the MLAT). Since Ms. Diaz-Cortes sought only communications related to the MLAT—reported on publicly by the press—there are no significant privacy interests in these records, and they should be disclosed.

### B.    Public Interest Overrides Any Privacy Interests in the Records.

Even assuming *arguendo* that there were a cognizable privacy interest in the records requested, the DOJ also bears the burden of "showing the privacy interest the government asserts categorically outweighs any public interest in disclosure," *Bartko*, 898 F.3d at 64, which it cannot do in this case since the records concern federal government activity and a matter of serious public concern.

The requested records speak to a topic of strong interest to CIR and the general public, further underscoring the need for prompt disclosure in this case. Public interest can overcome even *cognizable* privacy interests in requested records, as DOJ admits in the Denial. *See* Ex. B. Here, where no cognizable privacy interests exist and some of the information is already public, *see supra* Section III.A., the countervailing public interest in the records weighs in favor of

4

disclosure.  DOJ's issuance of a press release upon the filing of the complaint, Press Release, U.S. Attorney's Office for N. Dist. Ill., *Eight Defendants Charged with Distributing Heroin in Chicago Area on Behalf of Guerrero Unidos Mexican Drug Cartel* (Dec. 10, 2014), https://www.justice.gov/usao-ndil/pr/eight-defendants-charged-distributing-heroin-chicago-area-behalf-guerrero-unidos, underscores the public interest in the investigation.

In FOIA cases, the public interest inquiry asks whether disclosure would "contribute significantly to public understanding of the operations or activities of the government."  *Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 775 (1989)).  Where records "shed light on government conduct," public interest weighs in favor of disclosure.  *Am. Civ. Liberties Union*, 655 F.3d at 12.  In *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984), the D.C. Circuit observed:

> [T]he public may have an interest in knowing that a government investigation itself is comprehensive, that the report of an investigation released publicly is accurate, that any disciplinary measures imposed are adequate, and that those who are accountable are dealt with in an appropriate manner.

In this case, records responsive to the Request would shed light on the U.S. investigation of Guerreros Unidos and the gang's involvement in the Iguala forced disappearance, a topic of immense public interest which continues to be covered in the media to this day.  *See* Marina Franco, *Five Years Ago, 43 Students Vanished. The Mystery, and the Pain, Remain*, N.Y. TIMES, Sept. 26, 2019 (article about the disappearance commemorating its fifth anniversary).  The records, which would include "bilateral communications between the Mexican and United Sates government," Ex. A, would shed considerable light on federal government activity—the sharing of records with the Mexican government to facilitate its own investigation of the disappearance pursuant to the MLAT between the two countries.  As was the case in *Stern*, CIR and the public at large have a strong interest in knowing that the investigation underlying the *Cuevas* case was comprehensive and was reported on accurately.  This is especially the case where the Mexican government has been accused of a lack of transparency in their own investigation and conclusions about the disappearance.  Ryan Devereaux, *Ghosts of Iguala*, THE INTERCEPT, May 4, 2015, https://theintercept.com/2015/05/04/how-43-students-disappeared-in-mexico-part-1/.

## IV.    Conclusion

In conclusion, CIR hereby requests the FBI release all relevant information immediately. Should the FBI's office need clarification as to any aspect of either request, it may reach me at rbrooke@revealnews.org or (703)-217-4968.

Sincerely,

Rachel Brooke

cc: Victoria Baranetsky, general counsel

5

# Exhibit D



**U.S. Department of Justice**

Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

Anayansi Diaz-Cortes                                        July 9, 2020
The Center for Investigative Reporting
Suite 200                                        Re:   Appeal No. A-2020-01355
1400 65th
Emeryville, CA  94608                                  Request No. CRM-301214312
adiazcortes@revealnews.org                             MWH:JNW

**VIA: online portal**

Dear Anayansi Diaz-Cortes:

    You appealed from the action of the Criminal Division of the United States Department of Justice on your Freedom of Information Act request for access to specific records concerning United States v. Pablo Vega Cuevas. I note that your appeal concerns the Criminal Division's full denial of your request pursuant to Exemption 7(C).

    After carefully considering your appeal, I am affirming the Criminal Division's action on your request.  The FOIA provides for disclosure of many agency records.  At the same time, Congress included in the FOIA nine exemptions from disclosure that provide protection for important interests such as personal privacy, privileged communications, and certain law enforcement activities.  To the extent that non-public responsive records exist, disclosure of law enforcement records concerning a third-party individual could reasonably be expected to constitute an unwarranted invasion of personal privacy.  See 5 U.S.C. 552(b)(7)(C).  Further, it is reasonably foreseeable that releasing any non-public records, to the extent such records exist, would harm the interests protected by this exemption.  Because any non-public records responsive to your request would be categorically exempt from disclosure, the Criminal Division properly asserted Exemption 7(C) and was not required to conduct a search for the requested records.  See, e.g., DOJ v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 780 (1989) (holding "as a categorical matter" that release of investigatory records concerning a third party "can reasonably be expected to invade" that person's privacy and that such an invasion is unwarranted in the absence of an overriding public interest).

    I note that you requested expedited treatment of your appeal.  Because I am closing your underlying appeal within ten calendar days, your request for expedited treatment of this appeal is moot.

    Please be advised that this Office's decision was made only after a full review of this

matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of the Criminal Division in response to your request.

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5U.S.C. 552(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769. If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal. Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

Sincerely,

X_____

Matthew Hurd,
Acting Chief, Administrative Appeals Staff

# Exhibit E



from The Center for Investigative Reporting

Tuesday, June 9, 2020

FOIA/PA Unit (SARF)
Drug Enforcement Administration
8701 Morrissette Dr.
Springfield, VA 22152

Dear FOIA Officer:

This is a request under the Freedom of Information Act. I am a reporter with The Center for Investigative Reporting (henceforth "CIR") seeking all records related in whole or in part to a request for assistance from the Mexican government - whether by the Mutual Legal Assistance Treaty (MLAT), letter rogatory, or some other diplomatic communication - regarding the criminal case "United States of America v. Pablo Vega Cuevas et al." (14 CR 705).

We seek documents and communications created during the period of March 1, 2015, to April 1, 2018, that pertain to Mexico's interest in accessing information obtained in the course of the Vega investigation. Responsive records should include bilateral communications between the Mexican and United States governments as well as any US inter-agency communications following Mexico's request for assistance. The types of documents requested include, but are not limited to, emails, letters, diplomatic exchanges, memoranda, telephone transcripts, meeting minutes, talking points, reports, legal records, and intelligence information. Please omit from your search and review all copies of press and media reports as well as all press statements and press releases.

We do <u>not</u> seek information collected by US agents during their investigation of the Vega case (whether or not that was provided to the Mexican government): sensitive evidence, photographs, results of wiretaps, private data about the individuals involved, or any other materials gathered for law enforcement purposes. Rather, this FOIA request concerns the correspondence between Mexico and the United States about whether Mexico could have access to the material for its own, internal law enforcement purposes.

1400 65th, Suite 200  Emeryville, CA 94608 ▬▬▬▬▬▬
PHONE 510  809  3160 ▬▬▬▬▬▬▬▬        TWITTER @reveal
▬▬▬▬▬ WEB revealnews.org ▬▬▬▬▬




I am also requesting expedited processing on this request. 5 U.S.C. § 552(a)(6)(E)(v)(II); see also Al-Fayed v. CIA, 254 F.3d 300, 306 (D.C. Cir. 2001).

First, there is an urgency to inform the public about activities of the United States federal government regarding the investigation of the Ayotzinapa case. On March 18, 2020, the Mexican Attorney General's office issued arrest warrants against six former Mexican government officials on charges including torture, forced disappearance, and judicial misconduct. Information concerning what knowledge representatives of the United States had of the investigation into Ayotzinapa and the alleged crimes of Mexican government officials at the time, as well as what actions US agencies took in response, are a matter of exceptional, current media interest.

Second, there is a compelling need for information related to this case as the records are of acute interest to the mothers and fathers of the 43 disappeared Ayotzinapa students. Given Mexico's failure to solve the case and find their children, the families are desperate for any information that could help shed additional light on what happened. Not to do so in the most expeditious manner possible would be to contribute to the continuing torment suffered by victims' parents.

I certify that the statements contained in this letter regarding the alleged activity and public concern are true and correct to the best of my knowledge. Any information obtained from this request will be used for the public's interest in news stories written for CIR.

Please don't hesitate to contact me with any questions you may have.

Sincerely,

Anayansi Diaz-Cortes | Celu: 212.729.9184  | adiazcortes@revealnews.org
Reporter and Producer, Reveal from the Center for Investigative Reporting

# Exhibit F



**U.S. Department of Justice**
Drug Enforcement Administration
FOI/Records Management Section
8701 Morrissette Drive
Springfield, Virginia 22152

July 30, 2020

Case Number: 20-00548-F

Subject: Documents and communications created during the period of March 1, 2015, to April 1, 2018, that pertain to Mexico's interest in accessing information obtained during the course of the Pablo Vega Cuevas et al. investigation

Anayansi Diaz-Cortes
Reporter and Producer, Reveal
Center for Investigative Reporting
1400 65th Street, Suite 200
Emeryville, California 94608
adiazcortes@revealnews.org

Dear Ms. Diaz-Cortes:

     This letter responds to your Freedom of Information Act/Privacy Act (FOIA/PA) request dated June 9, 2020, addressed to the Drug Enforcement Administration, Freedom of Information/Privacy Act Unit, seeking access to information regarding the above subject.

     In your request letter, you request expedited treatment pursuant to the first, second, third, and/or fourth standards enumerated in the Department of Justice's regulations.  Expedited treatment pursuant to the first standard will be granted where not doing so "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."  5 U.S.C. § 552(a)(6)(E)(v)(I).  *See also* 28 C.F.R. § 16.5(e)(1)(i) (2019).  Under the second standard, you must show that there is "[a]n urgency to inform the public about an actual or alleged Federal Government activity, if made by a person primarily engaged in disseminating information."  5 U.S.C. § 552(a)(6)(E)(v)(II).  *See also* 28 C.F.R. § 16.5(e)(1)(ii) (2019).  Under the third standard, you must show that the request involves "[t]he loss of substantial due process rights." 28 C.F.R. § 16.5(e)(1)(iii) (2019).  Under the fourth standard, you must show that the subject matter of your request is a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."  *Id.* at § 16.5(e)(1)(iv).  This office makes determinations regarding the first three standards, while the Department's Director of Public Affairs makes determinations regarding the fourth standard. *See id.* at § 16.5(e)(2).

     You have requested expedited processing of your request pursuant to the Department's standard permitting expedition for requests involving "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information."  28 C.F.R. § 16.5(e)(1)(ii) (2019).  Based on the information you have

Case Number: 20-00548-F                                                          Page 2

provided, we have determined that your request for expedited processing under this standard should be denied.

To the extent that non-public responsive records exist, without consent, proof of death (*e.g.,* a copy of a death certificate or an obituary), or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy. *See* 5 U.S.C. § 552(b)(7)(C). Because any non-public records responsive to your request would be categorically exempt from disclosure, this office is not required to conduct a search for the requested records.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. *See* 5 U.S.C. § 552(c). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

You may contact our FOIA Public Liaison at 202-307-7596 for any further assistance and to discuss any aspect of your request. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with DEA's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's  website:  https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

If you have any questions regarding this letter, you may contact our Customer Service Hotline at 202-307-7596.

Sincerely,


*for*
Angela D. Hertel, Acting Chief
Freedom of Information/Privacy Act Unit
FOI/Records Management Section


Enclosure

# Exhibit G



Mr. Bobak Talebian
Director
Office of Information Policy
United States Department of Justice, Sixth Floor
441 G Street, NW
Washington, D.C. 20001

August 13, 2020

**VIA FOIA STAR PORTAL AND USPS**

**FOIA APPEAL Re: Freedom of Information Act Request No. 20-00548-F**

To Whom it May Concern:

I write on behalf of The Center for Investigative Reporting ("CIR") and its reporter, Ms. Anayansi Diaz-Cortes, to appeal, pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), a denial of a request sent in June 2020 for documents relating to the criminal case, *United States v. Pablo Vega Cuevas*, No. 1:14-cr-00705 (N.D. Ill. Dec. 8, 2014).

The United States Department of Justice ("DOJ")'s Drug Enforcement Administration ("DEA") incorrectly provides a *Glomar* response, asserting that it need not perform a search for the records requested because confirming their existence could constitute an unwarranted invasion of personal privacy under 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"). Because no cognizable privacy harm exists in this case, DEA has improperly issued a *Glomar* response and asserted Exemption 7(C). Moreover, the overwhelming public interest in the subject matter of these records overrides any possible privacy concerns. Consequently, the DEA has violated its obligations under FOIA.

## I.    Factual Background

This case concerns an investigation into activities of the Mexico-based gang, Guerreros Unidos, which has been associated with the forced disappearance of 43 Mexican students from a teaching college in the town of Ayotzinapa in Guerrero, Mexico. On September 26, 2014, Guerrero police stopped three buses of students bound for the city of Iguala, and surrounded them before opening fire. Ryan Devereaux, *Ghosts of Iguala*, THE INTERCEPT, May 4, 2015, https://theintercept.com/2015/05/04/how-43-students-disappeared-in-mexico-part-1/. The shootout continued throughout the night, and ultimately six people—including bystanders—were killed, and 43 of the students were allegedly taken into police custody, never to be heard from

again.  *Id.*  The Mexican government has asserted that it had conclusively determined that the missing students were turned over to Guerrerors Unidos members and killed, and that their bodies were burned in a dump near Iguala, but independent experts, witnesses, and the families of the students dispute this account.  *Id.*

In December of 2014, several prominent members of Guerrerors Unidos—including Pablo Vega Cuevas, alleged to be the leader of the Guerreros Unidos' Chicago operations—were arrested in Chicago for drug-trafficking and charged with several federal crimes in the Northern District of Illinois.  Mary Wisniewski, *Alleged Head of Chicago Branch of Mexican Drug Cartel Arrested*, REUTERS, Dec. 10, 2014, https://www.reuters.com/article/us-usa-mexico-drugs/alleged-head-of-chicago-branch-of-mexican-drug-cartel-arrested-idUSKBN0JO2CU20141210.  Defendants in the case were alleged to have "used commercial passenger buses to conceal and transport drugs from Mexico to Chicago," and it has been widely speculated that this operation was linked to the disappearance of the students in Iguala, who were on commercial buses when the ambush began.  Maureen Meyer, *Ayotzinapa Fact Sheet: Investigating the Enforced Disappearance of 43 Students in Mexico*, WASHINGTON OFFICE ON LATIN AMERICA, Feb. 24, 2016, https://www.wola.org/analysis/ayotzinapa-fact-sheet-investigating-the-enforced-disappearance-of-43-students-in-mexico/.

Due in part to the association between Guerreros Unidos and the disappearance of the students in Iguala, the criminal case against Cuevas and his co-defendants has received substantial public attention, which the DOJ acknowledged by issuing a press release about the case.  Press Release, U.S. Attorney's Office for N. Dist. Ill., *Eight Defendants Charged with Distributing Heroin in Chicago Area on Behalf of Guerrero Unidos Mexican Drug Cartel* (Dec. 10, 2014), *available at* https://www.justice.gov/usao-ndil/pr/eight-defendants-charged-distributing-heroin-chicago-area-behalf-guerrero-unidos.  The case is currently concluding, with most of the defendants having already been sentenced.  *See generally United States v. Pablo Vega Cuevas*, No. 1:14-cr-00705 (N.D. Ill. Dec. 8, 2014).

Multiple DEA publications in recent years discuss Guerreros Unidos and its drug trafficking operations in the U.S. and Mexico.  According to DEA, "[d]espite its short history, [Los Guerreros Unidos] has evolved into a [Mexican Transnational Criminal Organization] of growing concern, with a drug distribution network spanning several major [U.S.] cities" and exerting "drug trafficking influence . . . encompass[ing] several municipalities within the Mexican tristate area of Guerrero, Mexico and Morelos."  DRUG ENF'T AGENCY, DEA-DCT-DIR-040-17, NATIONAL DRUG THREAT ASSESSMENT (2017), at 6, *available at* https://www.dea.gov/sites/default/files/2018-07/DIR-040-17_2017-NDTA.pdf; *see also* DRUG ENF'T AGENCY, DEA-CHI-DIR-013-17, CARTELS AND GANGS IN CHICAGO (2017), at 2, *available at* https://www.dea.gov/sites/default/files/2018-07/DIR-013-17%20Cartel%20and%20Gangs%20in%20Chicago%20-%20Unclassified.pdf (describing Guerreros Unidos' role in trafficking drugs from Mexico to Chicago).  The association between Guerreros Unidos's drug trafficking operations and the disappearance of the students from Iguala suggests that DEA's records would shed light on this international tragedy.

2

As part of the Mexican government's investigation into the disappearance of the students in Iguala, it requested information from the U.S. government pursuant to the Treaty on Cooperation between the United States of America and the United Mexican States for Mutual Legal Assistance ("U.S.-Mexico MLAT")[1] collected by U.S. authorities during *U.S. v. Cuevas*. Maureen Meyer, *Ayotzinapa Fact Sheet: Investigating the Enforced Disappearance of 43 Students in Mexico*, WASHINGTON OFFICE ON LATIN AMERICA, Feb. 24, 2016, https://www.wola.org/analysis/ayotzinapa-fact-sheet-investigating-the-enforced-disappearance-of-43-students-in-mexico/.  The Mexican government's conclusions—that local government officials in Iguala and Guerreros Unidos were responsible—has been criticized by "journalists and human-rights investigators" as contrary to observations by witnesses and independent analysis of the evidence.  Frank Main, *Killing of 43 Students Bad for Business, Chicago Cartel Boss Said*, CHI. SUN-TIMES, Apr. 26, 2018, https://chicago.suntimes.com/2018/4/26/18392928/killings-of-43-mexican-students-bad-for-business-chicago-cartel-boss-said.

## II.      Procedural History

On June 9, 2020, Ms. Diaz-Cortes sent, on behalf of CIR, a FOIA request to the DEA seeking records related to a request for assistance from the Mexican government regarding *U.S. v. Cuevas* ("the Request").  A true and correct copy of the Request is attached as Exhibit A.  Ms. Diaz-Cortes requested "documents and communications . . . that pertain to Mexico's interest in accessing information obtained in the course of the *Cuevas* investigations," and specifically, "all records related in whole or in part to a request for assistance from the Mexican government – whether by the . . . MLAT[], letter rogatory, or some other diplomatic communication – regarding . . . [*U.S. v. Cuevas*]."  Ex. A.

In the Request, Ms. Diaz-Cortes specified that she sought only records "created during the period of March 1, 2015 to April 1, 2018." *Id.*  Ms. Diaz-Cortes explained that responsive records might include "emails, letters, diplomatic exchanges, memoranda, telephone transcripts, meeting minutes, talking points, reports, legal records, and intelligence information." *Id.* Importantly, Ms. Diaz-Cortes also described what she was *not* seeking in the Request: "sensitive evidence, photographs, results of wiretaps, [or] private data about the individuals involved." *Id.* Ms. Diaz-Cortes also requested expedited processing, explaining "there is an urgency to inform the public about activities of the United States federal government regarding the investigation of the Ayotzinapa case." *Id.*

---

[1] The U.S.-Mexico MLAT, signed in December 1987, establishes a formal information sharing procedure between the two nations "in order to provide mutual legal assistance in criminal matters."  Treaty on Cooperation between the United States of America and the United Mexican States for Mutual Legal Assistance, Signed at Mexico City on December 9, 1987, S. Treaty Doc. No. 100-13, art. 1, ¶ 1.  Specifically, the assistance concerns "prevention, investigation and prosecution of crimes . . . within the . . . jurisdiction of the requesting Party . . . in connection with ancillary proceedings . . . related to the criminal acts in question." *Id.*

3

On July 30, 2020, Ms. Diaz-Cortes received a denial of the Request from DEA ("the Denial").  A true and correct copy of the Denial is attached as Exhibit B.  First, DEA denied Ms. Diaz-Cortes's request for expedited processing, stating that the request did not meet the standard for "urgency to inform the public about an actual or alleged federal government activity . . . made by a person primarily engaged in disseminating information." Ex. B (quoting 28 C.F.R. § 16.5(e)(1)(ii)).

As to the substance of the Request, DEA denied the request in full, stating that "[t]o the extent that non-public responsive records exist, without consent, proof of death . . . or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy."  Ex. B.  It further stated that "[b]ecause any non-public records responsive to your request would be categorically exempt from disclosure, this office is not required to conduct a search for the requested records."  *Id.*  Finally, the Denial provided information on how to appeal the determination, *id.*, as required by 5 U.S.C. § 552(a)(6)(A).  CIR now appeals DEA's denial of the Request under FOIA.

## III.   Argument

The DEA has violated its obligations under FOIA by improperly issuing a *Glomar* Response and refusing to search for or disclose responsive records.  First, a *Glomar* response based on Exemption 7(C) is inappropriate where no cognizable privacy harm will result from disclosure.  Because Ms. Diaz-Cortes specifically excluded private information on individuals from the scope of the Request, *see* Ex. A, no cognizable privacy harm could result from disclosure.  Second, the overwhelming public interest in these records overrides any negligible privacy concerns.  The records concern both a high-profile criminal investigation and the role of the U.S. and Mexican governments in investigating the case, covered extensively by the media.

### A.   A *Glomar* Response Based on Exemption 7(C) is Inappropriate Where No Cognizable Privacy Harm Will Result from Disclosure.

A government agency may deny a FOIA request by stating that the agency cannot confirm or deny the very existence of the records—also known as a *Glomar* response —only "in that rare situation when [confirming or denying] would 'cause harm cognizable under a FOIA exception.'"  *Bartko v. Dep't of Justice*, 898 F.3d 51, 63–64 (D.C. Cir. 2018) (quoting *Roth v. Dep't of Justice*, 642 F.3d 1161, 1178 (D.C. Cir. 2011)).  *See also Pickard v. Dep't of Justice*, 653 F.3d 782, 785–86 (9th Cir. 2011).  These "extraordinary response[s] can be justified only when the confirmation or denial of the existence of responsive records, would, in and of itself, reveal exempt information."  DOJ, *FOIA Update: OIP Guidance: Privacy "Glomarization"*, Jan. 1, 1986, https://www.justice.gov/oip/blog/foia-update-oip-guidance-privacy-glomarization.  The agency also "bears the burden of showing that the fact of whether it possesses requested records is protected from disclosure under a FOIA exemption." *De Sousa v. Cent. Intelligence Agency,* 239 F. Supp. 3d 179, 190 (D.D.C. 2017).

4

Here, DEA cannot meet its burden.  Ms. Diaz-Cortes *specifically stated* that she was not seeking private information about individuals.  Ex. A. ("We do <u>not</u> seek . . . private data about the individuals involved) (emphasis in original).  Given this, the DEA cannot earnestly claim that disclosure, and even confirming the very *existence* of responsive records "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  Ex. B.  More practically, it is unclear how disclosure of records that contain no personal data about individuals could be invasive of personal privacy, as DEA alleges in the Denial.  *See id.*

Additionally, it is well established in FOIA case law that there is a diminished privacy interest in publicly available information.  *Am. Civ. Liberties Union v. U.S. Dept. of Justice*, 655 F.3d 1, 12 (D.C. Cir. 2011); *see also Cottone v. Reno*, 195 F.3d 550, 553-54 (D.C. Cir. 1999).  The MLAT request from the Mexican government for records related to the forced disappearance was comprehensively covered in the media, *see, e.g.*, Maureen Meyer, *Ayotzinapa Fact Sheet: Investigating the Enforced Disappearance of 43 Students in Mexico*, WASH. OFFICE ON LATIN AMERICA, Feb. 24, 2016, https://www.wola.org/analysis/ayotzinapa-fact-sheet-investigating-the-enforced-disappearance-of-43-students-in-mexico/; Frank Main, *Killing of 43 Students Bad for Business, Chicago Cartel Boss Said*, CHI. SUN-TIMES, Apr. 26, 2018, https://chicago.suntimes.com/2018/4/26/18392928/killings-of-43-mexican-students-bad-for-business-chicago-cartel-boss-said, and leaks to the Mexican press have revealed much of the substantive information shared via the MLAT request.  *Id.* (reporting that Cuevas stated the forced disappearance was "bad for business" in a BlackBerry message disclosed to the Mexican government pursuant to the MLAT).  Since Ms. Diaz-Cortes sought only communications related to this MLAT—reported on publicly by the press—there are no significant privacy interests in these records, and they should be disclosed.

### B.    Public Interest Overrides Any Privacy Interests in the Records.

DEA does not seem to have considered the immense public interest in these records, despite acknowledging that "overriding public interest" can support disclosure.  Ex. B.  Even assuming *arguendo* that there were cognizable privacy interests in the records requested, the DEA also bears the burden of "showing the privacy interest the government asserts categorically outweighs any public interest in disclosure," *Bartko*, 898 F.3d at 64, which it cannot do in this case since the records concern federal government activity and a matter of serious public concern.

The requested records speak to a topic of strong interest to CIR and the general public, further underscoring the need for prompt disclosure in this case.  Public interest can overcome even *cognizable* privacy interests in requested records, as DEA admits in the Denial.  *See* Ex. B.  Here, where no cognizable privacy interests exist and some of the information is already public, *see supra* Section III.A., the countervailing public interest in the records weighs in favor of disclosure.  DOJ's issuance of a press release upon the filing of the complaint, Press Release, U.S. Attorney's Office for N. Dist. Ill., *Eight Defendants Charged with Distributing Heroin in Chicago Area on Behalf of Guerrero Unidos Mexican Drug Cartel* (Dec. 10, 2014), *available at* https://www.justice.gov/usao-ndil/pr/eight-defendants-charged-distributing-heroin-chicago-area-behalf-guerrero-unidos, underscores the public interest in the investigation.

5

In FOIA cases, the public interest inquiry asks whether disclosure would "contribute significantly to public understanding of the operations or activities of the government." *Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 775 (1989)).  Where records "shed light on government conduct," public interest weighs in favor of disclosure.  *Am. Civ. Liberties Union v. U.S. Dept. of Justice*, 655 F.3d 1, 12 (D.C. Cir. 2011).  In *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984), the D.C. Circuit observed:

> [T]he public may have an interest in knowing that a government investigation itself is comprehensive, that the report of an investigation released publicly is accurate, that any disciplinary measures imposed are adequate, and that those who are accountable are dealt with in an appropriate manner.

In this case, records responsive to the Request would shed light on the U.S. investigation of Guerreros Unidos and the organization's involvement in the Iguala forced disappearance, a topic of immense public interest which continues to be covered in the media to this day.  *See* Marina Franco, *Five Years Ago, 43 Students Vanished. The Mystery, and the Pain, Remain*, N.Y. Times, Sept. 26, 2019 (article about the disappearance commemorating its fifth anniversary). The records, which would include "bilateral communications between the Mexican and United Sates government," Ex. A, would shed considerable light on federal government activity—the sharing of records with the Mexican government to facilitate its own investigation of the disappearance pursuant to the MLAT between the two countries.  As was the case in *Stern*, CIR and the public at large have a strong interest in knowing that the investigation underlying the *Cuevas* case was comprehensive and was reported on accurately.  This is especially the case where the Mexican government has been accused of a lack of transparency in their own investigation and conclusions about the disappearance.  Ryan Devereaux, *Ghosts of Iguala*, Intercept, May 4, 2015, https://theintercept.com/2015/05/04/how-43-students-disappeared-in-mexico-part-1/.

## IV.   Conclusion

In conclusion, CIR hereby requests that DOJ release all relevant information immediately. Should the OIP's office need clarification as to any aspect of either request, it may reach me at rbrooke@revealnews.org or (703)-217-4968.

Sincerely,

Rachel Brooke

cc: Victoria Baranetsky, general counsel

6

# Exhibit H



from The Center for Investigative Reporting

Tuesday, June 9, 2020

FOIA/Privacy Staff
Executive Office for United States Attorneys, Department of Justice
600 E St. NW (BICN Rm. 7300)
Washington, DC
20530-001

Dear FOIA Officer:

This is a request under the Freedom of Information Act. I am a reporter with The Center for Investigative Reporting (henceforth "CIR") seeking all records related in whole or in part to a request for assistance from the Mexican government - whether by the Mutual Legal Assistance Treaty (MLAT), letter rogatory, or some other diplomatic communication - regarding the criminal case "United States of America v. Pablo Vega Cuevas et al." (14 CR 705).

We seek documents and communications created during the period of March 1, 2015, to April 1, 2018, that pertain to Mexico's interest in accessing information obtained in the course of the Vega investigation. Responsive records should include bilateral communications between the Mexican and United States governments as well as any US inter-agency communications following Mexico's request for assistance. The types of documents requested include, but are not limited to, emails, letters, diplomatic exchanges, memoranda, telephone transcripts, meeting minutes, talking points, reports, legal records, and intelligence information. Please omit from your search and review all copies of press and media reports as well as all press statements and press releases.

We do not seek information collected by US agents during their investigation of the Vega case (whether or not that was provided to the Mexican government): sensitive evidence, photographs, results of wiretaps, private data about the individuals involved, or any other materials gathered for law enforcement purposes. Rather, this FOIA request concerns the correspondence between Mexico and the United States about whether Mexico could have access to the material for its own, internal law enforcement purposes.

I am also requesting expedited processing on this request. 5 U.S.C. § 552(a)(6)(E)(v)(II); see also Al-Fayed v. CIA, 254 F.3d 300, 306 (D.C. Cir. 2001).



1400 65th, Suite 200  Emeryville, CA 94608
PHONE 510 809 3160
TWITTER @reveal
WEB revealnews.org



First, there is an urgency to inform the public about activities of the United States federal government regarding the investigation of the Ayotzinapa case. On March 18, 2020, the Mexican Attorney General's office issued arrest warrants against six former Mexican government officials on charges including torture, forced disappearance, and judicial misconduct. Information concerning what knowledge representatives of the United States had of the investigation into Ayotzinapa and the alleged crimes of Mexican government officials at the time, as well as what actions US agencies took in response, are a matter of exceptional, current media interest.

Second, there is a compelling need for information related to this case as the records are of acute interest to the mothers and fathers of the 43 disappeared Ayotzinapa students. Given Mexico's failure to solve the case and find their children, the families are desperate for any information that could help shed additional light on what happened. Not to do so in the most expeditious manner possible would be to contribute to the continuing torment suffered by victims' parents.

I certify that the statements contained in this letter regarding the alleged activity and public concern are true and correct to the best of my knowledge. Any information obtained from this request will be used for the public's interest in news stories written for CIR.

Please don't hesitate to contact me with any questions you may have.

Sincerely,

Anayansi Diaz-Cortes | Celu: 212.729.9184 | adiazcortes@revealnews.org
Reporter and Producer, Reveal from the Center for Investigative Reporting

1400 65th, Suite 200 Emeryville, CA 94608
PHONE 510 809 3160                              TWITTER @reveal
WEB revealnews.org

# Exhibit I



Tuesday, June 9, 2020

Office of Information Programs and Services
(A/GIS/IPS/RL)
Department of State
2201 C St. NW, Rm. B266
Washington, DC 20520-0000

Dear FOIA Officer:

This is a request under the Freedom of Information Act. I am a reporter with The Center for Investigative Reporting (henceforth "CIR") seeking all records related in whole or in part to a request for assistance from the Mexican government - whether by the Mutual Legal Assistance Treaty (MLAT), letter rogatory, or some other diplomatic communication - regarding the criminal case "United States of America v. Pablo Vega Cuevas et al." (14 CR 705).

We seek documents and communications created during the period of March 1, 2015, to April 1, 2018, that pertain to Mexico's interest in accessing information obtained in the course of the Vega investigation. Responsive records should include bilateral communications between the Mexican and United States governments as well as any US inter-agency communications following Mexico's request for assistance. The types of documents requested include, but are not limited to, emails, letters, diplomatic exchanges, memoranda, telephone transcripts, meeting minutes, talking points, reports, legal records, and intelligence information. Please omit from your search and review all copies of press and media reports as well as all press statements and press releases.

We do not seek information collected by US agents during their investigation of the Vega case (whether or not that was provided to the Mexican government): sensitive evidence, photographs, results of wiretaps, private data about the individuals involved, or any other materials gathered for law enforcement purposes. Rather, this FOIA request concerns the correspondence between Mexico and the United States about whether Mexico could have access to the material for its own, internal law enforcement purposes.

I am also requesting expedited processing on this request. 5 U.S.C. § 552(a)(6)(E)(v)(II); see also Al-Fayed v. CIA, 254 F.3d 300, 306 (D.C. Cir. 2001).



1400 65th, Suite 200  Emeryville, CA 94608
PHONE 510 809 3160                              TWITTER @reveal
                    WEB revealnews.org



from The Center for Investigative Reporting

First, there is an urgency to inform the public about activities of the United States federal government regarding the investigation of the Ayotzinapa case. On March 18, 2020, the Mexican Attorney General's office issued arrest warrants against six former Mexican government officials on charges including torture, forced disappearance, and judicial misconduct. Information concerning what knowledge representatives of the United States had of the investigation into Ayotzinapa and the alleged crimes of Mexican government officials at the time, as well as what actions US agencies took in response, are a matter of exceptional, current media interest.

Second, there is a compelling need for information related to this case as the records are of acute interest to the mothers and fathers of the 43 disappeared Ayotzinapa students. Given Mexico's failure to solve the case and find their children, the families are desperate for any information that could help shed additional light on what happened. Not to do so in the most expeditious manner possible would be to contribute to the continuing torment suffered by victims' parents.

I certify that the statements contained in this letter regarding the alleged activity and public concern are true and correct to the best of my knowledge. Any information obtained from this request will be used for the public's interest in news stories written for CIR.

Please don't hesitate to contact me with any questions you may have.

Sincerely,

Anayansi Diaz-Cortes
Reporter and Producer, Reveal from the Center for Investigative Reporting
Celu: 212.729.9184  | adiazcortes@revealnews.org

1400 65th, Suite 200  Emeryville, CA 94608
PHONE 510  809  3160                                TWITTER @reveal
WEB revealnews.org