UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

THE CENTER FOR INVESTIGATIVE
REPORTING, *et al.*,

                      *Plaintiffs*,

        v.

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

                     *Defendants*.

Case No. 3:20-cv-06649-JSC

## DECLARATION OF ERIC F. STEIN

Pursuant to 28 U.S.C. § 1746, I, Eric F. Stein, declare and state as follows:

1.     I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department" or "State") and have served in this capacity since January 22, 2017. Previously, I served as the Acting Director since October 16, 2016, and as the Acting Co-Director since March 21, 2016. I am the State official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other records access provisions. As the Director of IPS, I have original classification authority and am authorized to classify and declassify national security information. Prior to serving in my current capacity, I worked directly for State's Deputy Assistant Secretary ("DAS") for Global Information Services ("GIS") and served as a senior advisor and deputy to the DAS on all issues related to GIS offices and programs, which include IPS.

1

2.      The core responsibilities of IPS include:  (1) responding to records access requests made by the public (including under the FOIA, the Privacy Act, and the mandatory declassification review requirements of the Executive Order governing classified national security information), by members of Congress, by other government agencies, and those made pursuant to judicial process such as subpoenas, court orders, and discovery requests; (2) records management; (3) privacy protection; (4) national security classification management and declassification review; (5) corporate records archives management; (6) research; (7) operation and management of the Department's library; and (8) technology applications that support these activities.

3.      I am familiar with the efforts of Department personnel to process the FOIA request that is the subject of this litigation, and I am in charge of coordinating the agency's search and processing efforts with respect to this request.  I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties.

4.      This declaration explains the Department's administrative processing of and response to Plaintiffs' FOIA request, including the Department's assertion of a Glomar response.

## I.  ADMINISTRATIVE PROCESSING OF PLAINTIFFS' FOIA REQUEST

5.      On June 9, 2020, Plaintiff Anayansi Diaz-Cortes ("Diaz-Cortes"), identifying herself as a reporter for Plaintiff Center for Investigative Reporting ("CIR" and, collectively with Diaz-Cortes, "Plaintiffs"), submitted a FOIA request to the Department seeking access to the following records:

> [A]ll records related in whole or in part to a request for assistance from the Mexican government – whether by the Mutual Legal Assistance Treaty (MLAT), letter rogatory, or some other diplomatic communication – regarding the criminal case "United States of America v. Pablo Vega Cuevas et al." (14 CR 705).

2

Plaintiffs' request covered the time period from March 1, 2015, through April 1, 2018. *See* Exhibit A.

6.      By email dated June 10, 2020, IPS formally acknowledged receipt of Plaintiffs' FOIA request and initially assigned it Case Control Number F-2020-05832. *See* Exhibit B. After Plaintiffs filed their Complaint on September 23, 2020, the Department reassigned Plaintiffs' FOIA request Case Control Number FL-2021-00022.

7.      The Department replied to Plaintiffs' request by letter dated March 4, 2021. The Department's letter included a Glomar response, declining to confirm or deny the existence of any records responsive to Plaintiffs' request with reference to FOIA Exemptions 3, 6, and 7(C), 5 U.S.C. §§ 552(b)(3), (b)(6), and (b)(7)(C). *See* Exhibit C.

## II.  THE DEPARTMENT'S GLOMAR DETERMINATION

8.      The Department receives thousands of FOIA requests every year. In the typical case, as noted above, IPS evaluates an incoming request and determines which offices, overseas posts, or other records systems within the Department are reasonably likely to contain the records requested. IPS then tasks those offices and overseas posts with conducting a search for records responsive to the FOIA request. If responsive records are retrieved, IPS then reviews those records to determine whether they may be released to the requester or whether they must be withheld pursuant to applicable FOIA exemptions.

9.      In some rare cases, however, the mere confirmation or denial of the existence of responsive records would reveal information exempt from disclosure under an applicable FOIA exemption. While such matters are not frequently encountered in FOIA requests, the Department must respond to all such requests by neither confirming nor denying the existence of

3

responsive records. This is referred to as a Glomar response. *See Wolf v. C.I.A.*, 473 F.3d 370,

374 (D.C. Cir. 2007).

      10.     In this case, the existence or nonexistence of the records sought by Plaintiffs'

request is exempt from disclosure under FOIA Exemptions 3, 6, and 7(C), 5 U.S.C. §§ 552(b)(3),

(b)(6), and (b)(7)(C). Any other approach (*i.e.*, confirming the existence of responsive records or

denying the existence of responsive records) would reveal information exempt from disclosure

under the FOIA.

<strong>FOIA Exemption 3</strong>

      11.     FOIA Exemption 3 provides that the FOIA does not apply to matters that are

"specifically exempted from disclosure by statute . . . , provided that such statute (A) requires

that the matters be withheld from the public in such a manner as to leave no discretion on the

issue, or (B) establishes particular criteria for withholding or refers to particular types of matters

to be withheld." 5 U.S.C. § 552(b)(3).

      12.     On December 9, 1987, the United States and Mexico signed The Treaty on

Cooperation Between the United States of America and the United Mexican States for Mutual

Legal Assistance (the "MLAT"). T.I.A.S. 91-503. A true and correct copy of the MLAT is

attached hereto as Exhibit D. The purpose of the MLAT is for the U.S. and Mexican

Governments to "cooperate with each other by taking all appropriate measures that they have

legal authority to take, in order to provide mutual legal assistance in criminal matters," including

by providing "documents, records and evidence" and "exchanging information" with one

another. *Id.* at Art. 1. The United States Senate provided its advice and consent to ratification of

the MLAT on October 24, 1989. It entered into force on May 3, 1991, upon the exchange of

ratification instruments between the Governments of the United States and Mexico, and it

4

*CIR, et al. v. DOJ, et al.*<br>No. 3:20-cv-06649-JS<br>Stein Declaration

remains in force. *See* U.S. Dep't of State, *Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2020* (Jan. 1, 2020), https://www.state.gov/treaties-in-force/. The MLAT is therefore equivalent to an act of the legislature, has the force of law, and qualifies as a statute. *See Dongkuk Int'l, Inc. v. DOJ*, 204 F. Supp. 3d 18, 25 (D.D.C. 2016) (U.S.-South Korea MLAT qualifies as a statute because "such treaties are equivalent to an act of the legislature"); *Grynberg v. United States DOJ*, 302 F. Supp. 3d 532, 539 (S.D.N.Y. 2018) (holding that "the U.S.Swiss [sic] MLAT is a Senate-ratified self-executing treaty . . . [and it] therefore has the force of law and qualifies as a statute" (citation omitted)), *aff'd by*, *Grynberg v. United States DOJ*, 758 Fed. App'x. 162 (2d Cir. 2019).

13.     Article 4(5) of the MLAT imposes non-discretionary confidentiality restrictions on its signatories. That provision of the treaty states as follows:

> The requested State shall keep confidential a request [made pursuant to the MLAT] and its contents unless otherwise authorized by the Coordinating Authority of the requesting Party. If the request cannot be executed without breaching the required confidentiality, the Coordinating Authority of the requested Party shall so inform the Coordinating Authority of the requesting Party, which shall then determine whether the request should nevertheless be executed.

Thus, absent the exceptional circumstance that a request cannot be fulfilled without breaching the MLAT's "required" confidentiality provision, any time the Mexican Government submits a request to the U.S. Government under the MLAT, the U.S. Government and, by extension, the Department must keep confidential even the fact that such a request has been made. The MLAT therefore constitutes a withholding statute within the meaning of Exemption 3. *See Dongkuk*, 204 F. Supp. 3d at 28 ("Congress' ratification of a treaty that obligates the United States to use its 'best efforts' to maintain the confidentiality of requests for assistance dictates that it be treated as a withholding statute under Exemption 3."); *Grynberg*, 302 F. Supp. 3d at 532 (finding as a matter of first impression that a mutual legal assistance treaty between the United States and

5

Switzerland qualified as a withholding statute under FOIA Exemption 3).  Furthermore, since the MLAT prohibits the disclosure of the existence or contents of requests made under the treaty, the Department is exempt pursuant to its terms from disclosing information in response to any FOIA request that would have the effect of confirming or denying the existence of an alleged request for assistance from the Mexican Government made pursuant to the MLAT.

14.    Neither Plaintiffs' FOIA request nor their Complaint sets forth any evidence, nor is State aware of any, indicating that the Department has publicly acknowledged any request for assistance by the Mexican government regarding the subject-matter of Plaintiffs' FOIA request. Additionally, Plaintiffs have not provided any evidence tending to show that the Mexican Government, as the alleged requesting party, has authorized the United States to publicly disclose the existence or contents of any such request.

15.    As noted above, Plaintiffs' FOIA request seeks "all records related in whole or in part to a request for assistance from the Mexican government – whether by the Mutual Legal Assistance Treaty (MLAT), letter rogatory, or some other diplomatic communication – regarding the criminal case 'United States of America v. Pablo Vega Cuevas et al.' (14 CR 705)." Hypothetically, if State responded to the portion of Plaintiffs' request seeking records related to the alleged MLAT request by admitting that it possessed responsive records, it would disclose the existence of the underlying MLAT request in direct violation of the U.S. Government's obligations pursuant to the MLAT.  In such a case, confirmation that State possessed responsive records would tend to reveal information exempt from disclosure by Exemption 3 of the FOIA because the Department has not previously confirmed or denied the existence of any such request.

6

16.     Nor could State confirm that it does not possess records responsive to Plaintiffs'
FOIA request without revealing exempt information.  A Glomar response is not effective unless
it is used for all similar requests, regardless of whether the Department possesses responsive
records.  If the Department provided a "no records" response every time a requester sought
documents related to alleged MLAT requests subject to non-discretionary confidentiality
provisions, it could not then respond to requests for which records do in fact exist by "refusing to
confirm or deny" the existence of those records without in effect disclosing that an MLAT
request exists, the very fact sought to be protected.  Accordingly, the Department must
consistently provide Glomar responses to any request for records related to alleged MLAT
requests subject to non-discretionary confidentiality provisions.

17.     The Department reasonably foresees that disclosure of information confirming or
denying the existence of a request submitted pursuant to the MLAT would harm interests
protected by Exemption 3 and the FOIA.  For example, disclosure in this circumstance would put
the United States out of compliance with its treaty obligations as ratified and made effective
under both international and domestic law, and could compromise the integrity of ongoing
criminal investigations and proceedings.  Disclosure of the information sought by Plaintiffs,
which the United States has promised Mexico it would keep confidential, could also hinder
Mexico's willingness to comply with its terms, including in response to future mutual legal
assistance requests from the United States.  This damage to the law enforcement relationship
could easily extend beyond the MLAT and cross into the bilateral work done pursuant to the
extradition treaty.  Finally, disclosure would foreseeably harm the credibility of the United States
and its international legal commitments in the eyes of existing treaty partners as well as potential

7

future bilateral and multilateral negotiating partners, eroding the U.S. Government's capacity to hold other countries to their obligations and to effectively negotiate future binding agreements.

### FOIA Exemptions 6 and 7(C)

18. FOIA Exemption 6, 5 U.S.C. § 552(b)(6), states that the FOIA does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

19. FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), is the law enforcement counterpart to Exemption 6. It protects the privacy interests of people mentioned in law enforcement records by providing, in relevant part, that the FOIA does not apply to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." The omission of the word "clearly" from the language of Exemption 7(C) and the lowering of the risk-of-harm standard from "would" to "could reasonably be expected to," renders the exemption broader in the law enforcement context. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989). Nonetheless, the analysis and balancing test required under both Exemptions 6 and 7(C)—pursuant to which a responding agency must weigh any personal privacy interests held by specific individuals with regard to the information against any public interest in disclosure—are sufficiently similar to warrant their consolidated treatment for purposes of this case.

20. As a threshold matter to assert Exemption 7, an agency must demonstrate that the withheld records or information were compiled for law enforcement purposes, including that they are related to the enforcement of U.S. federal law or foreign law, *see Bevis v. Dep't of State*, 801 F.2d 1386, 1388 (D.C. Cir. 1986) (finding no distinction between foreign and domestic

8

enforcement purposes in language of statute).  Records pertaining to even routine agency

activities can qualify for FOIA Exemption 7 protection when those activities involve a law

enforcement purpose.

21.      Plaintiffs' FOIA request seeks Department records related to the alleged sharing

of documents, records, and/or evidence between the United States and Mexico.  Any such

records would have originally been compiled in connection with a U.S. Government criminal

prosecution, and would have been shared in support of an alleged law enforcement investigation

being conducted by Mexico into the Ayotzinapa disappearances.  Any such records therefore

would necessarily have been compiled for law enforcement purposes, since they all would relate

to the parallel criminal investigations and prosecutions allegedly being conducted by the U.S.

and Mexican Governments to implement and enforce U.S. and Mexican law.  That is true

irrespective of Plaintiffs' instruction that their request should be interpreted to exclude "materials

gathered for law enforcement purposes."  *See* Exhibit A.  The stated purpose of the MLAT is

entirely law enforcement-related; it envisions that Mexico and the United States will "provide

mutual legal assistance in *criminal matters* . . . [such as] the prevention, investigation and

prosecution of crimes or any other criminal proceedings arising from acts which are within the

competence or jurisdiction of the requesting Party at the time the assistance is requested, and in

connection with ancillary proceedings of any other kind related to the criminal acts in question."

*See* Exhibit D, Art. 1(1) (emphasis added).  In fact, any requests made pursuant to the MLAT

would in the normal course have been directed to the Department of Justice Criminal Division's

Office of International Affairs ("OIA"), rather than the Department, given their inherent nexus to

law enforcement matters.  Thus, all of the records responsive to Plaintiffs' request—including

even records reflecting the initial request for assistance itself that Plaintiffs allege Mexico sent to

9

the United States—would necessarily and inextricably be linked to the law enforcement purpose
underlying the alleged MLAT request: assisting Mexico's alleged law enforcement investigation
into the Ayotzinapa disappearances. Accordingly, the records that Plaintiffs have requested, if
they exist, would meet the threshold requirement of FOIA Exemption 7.

22.     Plaintiffs' request implicates an ongoing criminal case in the Northern District of
Illinois, *United States v. Pablo Vega Cuevas, et al.* (the "Cuevas Case").  According to public
court filings associated with the Cuevas Case submitted by the Department of Justice, those
criminal defendants include or have included (1) Pablo Vega Cuevas; (2) Arturo Martinez;
(3) Alexander Figueroa; (4) Eliseo Betancourt-Pereira; (5) Santos Wilfredo Sorto Hernandez;
(6) Roberto Sanchez; (7) Jose Rodriguez; and (8) Isaias Mandujano (the "Cuevas Defendants").
As of January 29, 2021, at least four of the Cuevas Defendants had not pleaded guilty to or been
convicted of any crime in connection with those proceedings, one of the Cuevas Defendants had
been dismissed before any plea or conviction, and three of the Cuevas Defendants had been
convicted and sentenced.  None of the Cuevas Defendants consented to the disclosure of
information from State in response to Plaintiffs' FOIA request, and the Department has no
reason to believe (either based on the content of Plaintiffs' FOIA request or the Cuevas Case
docket) that any of the Cuevas Defendants are deceased.

23.     Records responsive to Plaintiffs' request, assuming any exist, would necessarily
associate the Cuevas Defendants with an alleged request for assistance that, according to
Plaintiffs' FOIA request, was sent by the Mexican Government for "its own internal law
enforcement purposes."  However, neither Plaintiffs' FOIA request nor their Complaint set forth
any evidence, nor is State aware of any, indicating that the Department has publicly
acknowledged the existence of any request for assistance by the Mexican government regarding

10

the subject-matter of Plaintiffs' FOIA request. It follows that no public acknowledgement has been made of the content of either any such request or of any records that may thereafter have been provided by the United States pursuant to its obligations under the MLAT. The Department's confirmation of the existence or non-existence of records responsive to Plaintiffs' FOIA request would therefore necessarily introduce new, not publicly-acknowledged information concerning the Cuevas Defendants.

24.      Even acknowledging the existence or non-existence of documents responsive to Plaintiffs' request would therefore foreseeably harm the personal privacy of the Cuevas Defendants, by associating them with criminal organizations and activities beyond those that have been publicly acknowledged in connection with the Cuevas Case and by triggering questions about the role played by the Cuevas Defendants in the Mexican Government's alleged investigation. As a result, confirming the existence or non-existence of records in this case could establish links between the Cuevas Defendants and criminal activity to a greater or different degree than exists in the official public record. Acknowledgement of those links could reasonably be expected to subject the Cuevas Defendants, as well as their families and known associates, to harassment, embarrassment, and/or undue public attention. That harassment, embarrassment, and reputational harm is precisely the type of foreseeable harm that Exemptions 6 and 7(C) are designed to guard against.

25.      Plaintiffs' exclusion of "sensitive evidence" and "private data" from the scope of their request would not remedy that foreseeable harm, because simply acknowledging the fact that any evidence and data matching the description in Plaintiffs' request were exchanged between the U.S. and Mexican Governments—even without disclosing the underlying evidence and data itself—would foreseeably prejudice the Cuevas Defendants' personal privacy interests.

11

Nor does the fact that four of the Cuevas Defendants have pleaded guilty to some degree of criminal conduct in the Cuevas Case vitiate their privacy interests. As noted above, official acknowledgement of the alleged MLAT request submitted by the Mexican Government would necessarily introduce new information about the Cuevas Defendants that State reasonably expects would subject them to unwarranted invasions of personal privacy.

26.      Given the substantial privacy interest of the Cuevas Defendants that would be implicated by the Department's response to Plaintiffs' FOIA request, I am required to determine whether any public interest exists in confirming the existence or nonexistence of records responsive to Plaintiffs' FOIA request. In *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989), the Supreme Court described two rules for determining the public interest in disclosure of information involving a privacy interest: (1) whether disclosure would serve the "core purpose" for which Congress enacted the FOIA (*i.e.*, to show "what the government is up to"); and (2) that public interest means the interest of the public in general, not the particular interests of the person or group seeking the information.

27.      Plaintiffs have stated multiple motivations for their request, but most of those share no connection with the FOIA's core purpose of shedding light on government behavior. For example, Plaintiffs state that their request was motivated by, *inter alia*, the "acute interest to the mothers and fathers of the 43 disappeared Ayotzinapa students" of resolving certain outstanding questions about the disappearances, the "especially voracious" interest in the Ayotzinapa disappearances among members of the media and the public, and Plaintiffs' desire to "publish a story about the disappearance to commemorate its seventh anniversary." None of those interests relate in any way to the operations and activities of the government, and they therefore cannot satisfy Exemption 7(C)'s public interest requirement.

28.     Plaintiffs do elsewhere state that "there is an urgency to inform the public about activities of the United States federal government regarding the investigation of the Ayotzinapa case." But that stated interest cannot be squared with the scope of Plaintiffs' FOIA request, which seeks information about the Mexican Government's alleged request for mutual legal assistance in connection with *its own* alleged "internal" investigation of the Ayotzinapa matter. Indeed, the events surrounding the Ayotzinapa disappearances all took place in Mexico, the subject of Plaintiffs' FOIA request is an alleged MLAT request from Mexico, and Plaintiffs' request and Complaint repeatedly suggest that responsive documents would shed light on alleged improprieties by Mexican officials. There is no cognizable public interest under the FOIA in revealing the activities of the Mexican Government.

29.     By contrast, the U.S. Government's involvement in the Ayotzinapa investigation, if any, would have been limited to providing Mexican officials with information compiled in connection with a U.S. criminal matter pursued separately from any alleged Ayotzinapa investigation, but which Plaintiffs speculate may nonetheless have some ties to those investigative efforts. Even granting that the wider public would be interested to learn about the alleged Ayotzinapa investigation, any public interest in the U.S. Government's tangentially-related information sharing—if such sharing even occurred—would be minimal, and would not be sufficient to counterbalance the significant privacy interests that would be implicated were the Department to confirm or deny the existence of records responsive to Plaintiffs' FOIA request.

30.     Thus, because the individual privacy interests that would be implicated were the Department to confirm the existence or nonexistence of records responsive to Plaintiffs' FOIA request significantly outweigh any countervailing public interests, the Department can neither confirm nor deny the existence of such records pursuant to FOIA Exemptions 6 and 7(C).

13

### III.  CONCLUSION

31.     Based upon my review, I conclude that the acknowledgement of the existence or

nonexistence of the information requested by Plaintiffs is protected from disclosure and that the

Department's Glomar response and categorical refusal to search for records is proper pursuant to

FOIA Exemptions 3, 6, and 7(C), as set forth above.


\* \* \*


I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.


Executed this ___4th___ day of March 2021, Washington, D.C.


Eric F. Stein


14