UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **THE CENTER FOR INVESTIGATIVE REPORTING and ANAYANSI DIAZ-CORTES,** ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) | Case No. 3:20-cv-06649-JSC |
| **UNITED STATES DEPARTMENT OF JUSTICE and UNITED STATES DEPARTMENT OF STATE,** ) ) ) ) | |
| **Defendants.** ) ) | |

## DECLARATION OF JOHN E. CUNNINGHAM III

I, John E. Cunningham III, declare the following to be a true and correct statement of facts:

1.      I am a Trial Attorney in the United States Department of Justice (DOJ), Criminal Division and am currently assigned to the Freedom of Information Act (FOIA) and Privacy Act (PA) Unit, a component of the Office of Enforcement Operations (OEO), where I have worked since November 7, 2011. I have been employed as a Trial Attorney with DOJ since October 1998. From October 13, 1998 to November 7, 2011, I was employed by the Fraud Section of the Criminal Division.

2.      In my capacity as an Attorney in the FOIA/PA Unit, and in conjunction with the Chief and Deputy Chief of the FOIA/PA Unit, I assist in supervising the handling of FOIA and PA requests processed by the FOIA/PA Unit.  I am responsible for, among other things, providing litigation support and assistance to Assistant United States Attorneys and Civil

Division Trial Attorneys who represent the Criminal Division in lawsuits filed in federal court under the FOIA and/or the PA stemming from requests for Criminal Division records.

3.      The FOIA/PA Unit is responsible for processing FOIA/PA requests that seek records from the Criminal Division.  The FOIA/PA Unit determines whether the Criminal Division maintains records responsive to FOIA/PA requests, and if so, whether they can be released in accordance with the FOIA and the PA.  In processing such requests, the FOIA/PA Unit consults with personnel in the Criminal Division sections where potentially responsive records may be maintained and, when appropriate, with other components within the Department of Justice, as well as with other Executive Branch agencies.

4.      Due to the nature of my official duties, I am familiar with the procedures followed by the Criminal Division in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the PA, 5 U.S.C. § 552a.  Specifically, I am familiar with the FOIA request submitted by Plaintiffs to the Criminal Division that is at issue in this litigation and the Criminal Division's response to that request.

5.      I make the statements herein on the basis of personal knowledge, as well as on information provided to me by others within the Criminal Division with knowledge of the handling of Plaintiffs' request at issue in this case and on information acquired by me in the course of performing my official duties in the FOIA/PA Unit.

### PLAINTIFFS' FOIA REQUEST AND THE CRIMINAL DIVISON'S HANDLING OF PLAINTIFFS' REQUEST

6.      On June 9, 2020, Plaintiffs submitted a FOIA request to the Criminal Division seeking in relevant part:

> "[A]ll records related in whole or in part to a request for legal assistance from the Mexican government – whether by the Mutual Legal Assistance Treaty (MLAT), letter rogatory, or some other diplomatic communication – regarding the criminal

case 'United States of America v. Pablo Vega Cuevas et al.' (14 CR 705). [Plaintiffs] seek documents and communications created during the period of March 1, 2015, to April 1, 2018, that pertain to Mexico's interest in accessing information obtained in the course of the Vega investigation. Responsive records should include bilateral communications between the Mexican and United States governments as well as any US inter-agency communications following Mexico's request for assistance. The types of documents requested include, but are not limited to, emails, letters, diplomatic exchanges, memoranda, telephone transcripts, meeting minutes, talking points, reports, legal records, and intelligence information . . . [Plaintiffs] do not seek information collected by US agents during their investigation of the Vega case (whether or not that was provided to the Mexican government): sensitive evidence, photographs, results of wiretaps, private data about the individuals involved, or any other materials gathered for law enforcement purposes. Rather this FOIA request concerns the correspondence between Mexico and the United States about whether Mexico could have access to the material for its own, internal law enforcement purposes."

See Exhibit A.

7.      Upon receipt of Plaintiffs' FOIA request, the Criminal Division reviewed the request; assigned it administrative tracking number CRM-301214312; and issued a final response to Plaintiffs in a letter dated June 24, 2020. The letter informed Plaintiffs that to the extent public records exist, without consent, proof of death, or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy. See 5 U.S.C. § 552(b)(7)(C). The letter also advised Plaintiffs that because any non-public records responsive to their request would be categorically exempt from disclosure, the Criminal Division was not required to conduct a search for the records requested. See Exhibit B.

8.      By letter dated March 3, 2021, the Criminal Division provided Plaintiffs with a supplemental final response letter. The letter informed Plaintiffs that the Criminal Division had decided neither to expressly confirm nor deny the existence of such records pursuant to Exemptions 3, which concerns matters specifically exempted from release by statute, including, in this instance, the Mutual Legal Assistance Treaty with Mexico, U.S.-Mexico, Dec. 9, 1987,

3

TREATY DOC. NO. 100-13 (1991), and (b)(6) and (b)(7)(C). The letter further informed

Plaintiffs that even to acknowledge the existence of responsive records could reasonably be

expected to, for example, violate a confidentiality provision related to a request for Mutual Legal

Assistance, and, in addition, to acknowledge the existence of law enforcement records on another

individual could reasonably be expected to constitute an unwarranted invasion of personal

privacy. See Exhibit C.

9.      By letter dated July 7, 2020, Plaintiffs filed an administrative appeal with the

Department of Justice's Office of Information Policy (OIP) based upon the Criminal Division's

final response to their FOIA request. The appeal was assigned administrative tracking number A-

2020-01355. See Exhibit D.

10.     By letter dated July 9, 2020, OIP affirmed the Criminal Division's final response

to Plaintiffs' FOIA request. OIP explained that "[t]o the extent that non-public records exist,

disclosure of law enforcement records concerning a third-party individual could reasonably be

expected to constitute an unwarranted invasion of personal privacy. See 5 U.S.C. § 552(b)(7)(C).

Further, it is reasonably foreseeable that releasing any non-public records, to the extent that such

records exist, would harm the interests protected by this exemption." OIP further explained that

"[b]ecause any non-public records responsive to [Plaintiffs'] request would be categorically

exempt from disclosure, the Criminal Division properly asserted Exemption 7(C) and was not

required to conduct a search for the requested records. See e.g., DOJ v. Reporters Committee for

Freedom of the Press, 489 U.S. 749, 780 (1989) (holding "as a categorical matter" that release of

investigatory records concerning a third-party "can reasonably be expected to invade" that

person's privacy and that such an invasion is unwarranted in the absence of an overriding public

interest)." See Exhibit E.

11.     Plaintiffs filed this lawsuit on September 23, 2020. See Dkt. No. 1.

## JUSTIFICATION FOR NON-DISCLOSURE

12.     The Criminal Division denied this request for third-party law enforcement

records, to include various types of requests for assistance and related communications

pertaining to those requests for assistance based on the FOIA Exemptions (b)(3), which concerns

matters specifically exempted by statute (in this instance, the Treaty Between the United States

of America and the United Mexican States on Mutual Legal Assistance in Criminal Matters,

U.S.-Mex., Dec. 9, 1987, S. TREATY DOC. NO. 100-13 (1988) (MLAT)), (b)(6), which

concerns material the release of which would constitute a clearly unwarranted invasion of the

personal privacy of third parties, and (b)(7)(C), which concerns records or information compiled

for law enforcement purposes the release of which could reasonably be expected to constitute an

unwarranted invasion of the personal privacy of third parties. 5 U.S.C. §§ 552(b)(3), (b)(6), and

(b)(7)(C).

**Exemption (b)(3)**

13.     FOIA Exemption 3 permits the withholding of matters "specifically exempted

from disclosure by statute (other than section 552b of this title), provided that such statute

(A) requires that the matters be withheld from the public in such a manner as to leave no

discretion on the issue, or (B) establishes particular criteria for withholding or refer to particular

types of matters to be withheld. 5 U.S.C. § 552(b)(3) (2006), amended by OPEN Government

Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524.[1] In this instance, the request was denied

pursuant to the Treaty Between the United States of America and the United Mexican States on

---

[1] The OPEN FOIA Act of 2009 amended Exemption 3 by adding a new requirement that any statute "enacted after the date of enactment of the OPEN FOIA Act of 2009 must specifically cite to this paragraph." 118 Stat. at 2184.

Mutual Legal Assistance in Criminal Matters, U.S.-Mex., Dec. 9, 1987, S. TREATY DOC. NO. 100-13 (1988).

14.    The Criminal Division determined that the MLAT qualifies as a non-disclosure statute under the first prong of Exemption 3. Article 4, § 5 of the MLAT requires the Requested State to treat a request as confidential. Article 4, § 5 of the MLAT specifically states in relevant part that "[t]he requested State shall keep confidential a request and its contents unless authorized by the Coordinating Authority of the requesting Party." This treaty was signed at Mexico City by the United States of America on December 9, 1987, and was transmitted by the President to the Senate for advice and consent to ratification on February 16, 1988, and approved by Senate (see 135 Cong Rec S 13887, S 13888-S 13889, October 24, 1989); and entered into force on May 3, 1991, 100th Cong., 2d Session. Accordingly, because the MLAT does not permit discretion to disclose documents related to a request for assistance, it qualifies as a non-disclosure statute under Exemption 3(A).

15.    Plaintiffs are seeking records related in whole or in part to an alleged MLAT request for legal assistance from the United Mexican States, the existence of which has not been acknowledged by the Department of Justice. Any request for assistance from the United Mexican States to the United States of America made pursuant to the MLAT would be confidential – the request and its contents. To search for records potentially responsive to Plaintiffs' FOIA request, would acknowledge the existence of an alleged MLAT request in direct violation of the non-disclosure provision of the MLAT. Nor could the Department of Justice confirm that it does not posses records responsive to Plaintiffs' FOIA request without revealing exempt information. A categorical denial is not effective unless it is used for all similar requests, regardless of whether the Department of Justice possesses responsive records. If the Department of Justice issued a "no

records" response each time a requester seeks documents related to an alleged MLAT request, subject to non-discretionary confidentiality provisions, it could not respond to requests for which records do in fact exist by "refusing to confirm or deny" the existence of those record within in effect disclosing the existence of an MLAT, the very fact sought to be protected. Accordingly, the Department of Justice must consistently provide categorical denial responses to any request for records related to alleged MLAT requests subject to non-discretionary confidential provisions.

16.     In sum, the Criminal Division denied Plaintiffs' FOIA request upon Exemption 3 because any request from the United Mexican States was made pursuant to the MLAT which was ratified by the Senate, and which required that matters be withheld from the public in such a manner as to leave no discretion on the issue.

**Exemptions (b)(6) & (b)(7)(C)**

17.     The Criminal Division further predicates its denial to search for MLAT records, letters rogatory, and/or other diplomatic communications, including bilateral communications between the Mexican and United States governments as well as US inter-agency communications related to Mexican requests for assistance, to include, emails, letters, diplomatic exchanges, memoranda, telephone transcripts, meeting minutes, talking points, reports, legal records and intelligence information on FOIA Exemptions 6 (general privacy provision) and 7(C) (law enforcement privacy provision), because when a requester seeks third-party information that pertains to another individual, without (a) providing proof of the third-party's death; (b) written consent by the third-party authorizing the Criminal Division to disclose his/her information to the requester; or (c) demonstrates that a public interest outweighs the third-party's

privacy interests, acknowledgement of records by searching and disclosure of information about

a third-party would constitute an unwarranted invasion of that individual's personal privacy.

18.     FOIA Exemption 6 protects information in "personnel and medical files and

similar files when the disclosure of such information would constitute a clearly unwarranted

invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" is generally read

broadly to encompass any file containing information that applies to a particular person. Here,

the records requested by Plaintiffs constitute "similar files" as they are seeking records regarding

individuals. When invoked in relation to information in law enforcement records, Exemption 6

basically covers the same information as Exemption 7(C), although the burden for establishing

application of Exemption 6 is generally considered to be higher.[2] In any event, in order to apply

either exemption, the same balancing test governs–*i.e.*, an individual's privacy interests must be

balanced against the public's interest in disclosure.

19.     Exemption 7 of the FOIA protects from mandatory disclosure "records or

information compiled for law enforcement purposes, but only to the extent that the production of

such law enforcement records or information [could reasonably be expected to cause one of the

six sets of harms enumerated in the subpart of the exemption]." 5 U.S.C. § 552(b)(7). FOIA

Exemption 7(C) protects information "compiled for law enforcement purposes" and protects

personal privacy when disclosure "could reasonably be expected to constitute an unwarranted

invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

---

[2] The practice of the Criminal Division is to assert Exemption (b)(6) in conjunction with
(b)(7)(C) where, as in this case, the release of certain information contained in law enforcement
records would constitute a clearly unwarranted invasion of personal privacy, in violation of
Section 552(b)(6), and could reasonably be expected to constitute an unwarranted invasion of
personal privacy, in violation of Section 552(b)(7)(C).

20.     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records were compiled for law enforcement purposes. Law enforcement agencies such as the Criminal Division must demonstrate that the records at issue are related to the enforcement of federal laws and the enforcement activity is within the law enforcement duty of that agency. Blackwell v. FBI, 646 F.3d 37, 40 (D.C. Cir. 2011).

21.     The Criminal Division develops, enforces, and supervises the application of federal criminal laws. Specifically, the Office of International Affairs (OIA), within the Criminal Division, is the hub for international criminal law enforcement coordination, which includes international evidence gathering and international relations and treaty matters. The records sought by Plaintiffs in this case—to the extent they exist—are for various forms of alleged requests for legal assistance pertaining to a prosecution involving Pablo Vega Cuevas and his co-defendants. The alleged requests for assistance were made in order for Pablo Vega Cuevas and his co-defendants to face the prospect of prosecution in Mexico. See Exhibits A and D. OIA is responsible for ensuring that the United States meets its reciprocal obligations to foreign countries in connection with the investigation and prosecution of transnational criminal matters. Assuming, the Criminal Division and the United Mexican States are both acting jointly as collaborative law enforcement agencies, and the records requested reflect that law enforcement function, as Plaintiffs suggest in their FOIA request and FOIA appeal, the records at issue here meet the threshold requirement of FOIA Exemption (b)(7). See Exhibit A and D.

22.     Here, the Criminal Division concluded that it was not required to search for alleged requests for assistance records, including communications regarding the requests pertaining to the criminal investigation and prosecution of Pablo Vega Cuevas and his co-defendants, Isaias Mandujano – charges dismissed; Jose Rodriguez – charges pending;

Alexander Figueroa – guilty plea entered; Eliseo Betancourt Pereira – guilty plea entered; Santos Wilfredo Sorto Hernandez – guilty plea entered; Roberto Sanchez – fugitive, and Arturo Martinez – fugitive, in response to Plaintiffs' FOIA request, because they have not consented, nor have Plaintiffs provided information that any of these individuals are deceased.

23.     It is well-recognized that individuals have strong privacy interests in law enforcement related records – whether they are suspects, witnesses or law enforcement officers. An individual, to whom records pertain in a law enforcement matter, would have an even stronger privacy interest because he may potentially not only be investigated, but prosecuted for a crime/wrongdoing. References connecting individuals to law enforcement investigations will engender comment, speculation, and potentially harassment, and can be embarrassing and stigmatizing. The fact that an event is not wholly private does not strip the individual of privacy interests in the information, or so that the highly sensitive information should not be made public.

24.     After identifying the existence of privacy interests, the Criminal Division will balance those interests against any public interest in disclosure to determine whether there is a significant public interest that outweighs the substantial privacy interests. In most cases, no discernible public interest in any such disclosure exists because information about an individual does not shed light on the Criminal Division's activities, and any disclosure consequently would constitute a clearly unwarranted invasion of personal privacy. To be granted disclosure in requesting information about a third-party, a requester must clearly demonstrate that a public interest would outweigh the individual's personal privacy interests and significantly benefit the public. The requester must produce evidence that a "reasonable person" would find to tip "the FOIA scale . . . against the cognizable privacy interest in the requested records." National

Archives and Records Admin. v. Favish, 541 U.S. 157, 174-75, 124 S. Ct. 1570, 158 L. Ed. 2d

319 (2004). Moreover, in determining whether Exemption 7(C) "applies to particular

information, the court must balance the interest in privacy of individuals mentioned in the

records against the public interest in disclosure." Petrucelli v. Dep't of Justice, 51 F. Supp. 3d

142, 164 (D.D.C. 2014). "It is a FOIA requester's obligation to articulate a public interest

sufficient to outweigh an individual's privacy interest, and the public interest must be

significant." Id. That interest must be more than an interest in "having the information for its

own sake." Favish, 541 U.S. at 172. Indeed, "the only public interest relevant for purposes of

Exemption 7(C) is one that focuses on the citizen's right to be informed about what their

government is up to." Petrucelli, 51 F. Supp. 3d at 164 (quoting Davis v. Dept. of Justice, 968

F.2d 1276, 1282 (D.C. Cir. 1992)). The case of Navigators Insurance Company v. Department of

Justice, 155 F. Supp. 3rd 157 (D. Conn. 2016), is illustrative. In Navigators Insurance, Plaintiffs

asserted that the privacy interests of certain individual defendants were insignificant because the

individuals in the criminal cases "ha[d] been publicly charged. . . and ultimately pled guilty in

plea agreements with the government." The district court, however disagreed, holding that this

argument had been foreclosed by the Supreme Court's decision in U.S. Dept. of Justice v.

Reporter's Committee for Freedom of Press that individuals have a privacy interest even as to

information which has previously been publicly disclosed. Id., 489 U.S. 749, 763-764, 109 S. Ct.

1468, 1482-83, 103 L. Ed. 2d 774 (1989). "While it is true that the government may not rely

upon on a FOIA exemption to withhold information that has been officially acknowledged or is

in the public domain, the requester has the initial burden of showing prior disclosure by pointing

to specific publicly disclosed information identical to that being withheld." Stephens v.

Department of Justice, 26 F. Supp. 3d 59, 70 (D.D.C. 2014) (quoting Afshar v. Dept. of State,

702 F. 2d 1125, 1130-34 (D.C. Cir. 1983); <u>Davis</u>, 986 F. 2d 1276; <u>Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.</u>, 463 F. 3d 239, 245 (2d Cir. 2006) ("While the government maintains the burden of persuasion that information is not subject to disclosure under FOIA, 'a party that asserts that material is publicly available carries the burden of *production* on that issue.'") (quoting <u>Davis</u>, 968 F. 2d at 1279)).

25.     Here, the Criminal Division first concluded that Pablo Vega Cuevas and his co-defendants maintain a strong privacy interest in records about themselves. The Criminal Division next concluded that no public interest exists that overrides Pablo Vega Cuevas and his co-defendants' privacy interests. Plaintiffs averred that "[t]he requested records are of particular interest because they relate directly to a forced disappearance of 43 student teachers in Mexico, an incident which has been widely covered in the media and caused international outcry" and further avers that "[t]he requested records are of particular interest to Plaintiffs because, as members of the news media, they have an abiding interest in informing the public about matters of serious concern. Plaintiffs plan to publish a story about the disappearance to commemorate its seventh anniversary." <u>See</u> Dkt. No. 1, at page 2.

26.     In their FOIA request, Plaintiffs aver that "[w]e do <u>not</u> seek information collected by US agents during their investigation of the Vega case (whether or not that was provided to the Mexican government): sensitive evidence, photographs, results of wiretaps, private data about the individuals involved, or any other materials gathered for law enforcement purposes. Rather, [Plaintiffs] FOIA request concerns the correspondence between Mexico and the United States about whether Mexico could have access to the material for its own, internal law enforcement purposes." <u>See</u> Exhibit A.

27.     Plaintiffs' interest in correspondence related to how the Government of Mexico proposes to conduct its own internal law enforcement investigation into the student teacher disappearances, and Plaintiffs' desire to possess such information, would indeed shed light into *how the Government of Mexico* conducts its own internal law enforcement investigations; however, such is not a core objective of the FOIA. See Reporters Committee, 489 U.S. at 773 ("[o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely within [the FOIA's] statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."). Based upon the foregoing, the Criminal Division concluded that records concerning *how the Government of Mexico* intends to conduct its own internal law enforcement investigation, coupled with Plaintiffs' intent to publish a story about the student teacher disappearances, without more, falls far short of the showing necessary to establish a public interest that tips the FOIA scales in favor of disclosure.

28.     Because the Criminal Division found no overriding public interest in disclosure, and because Pablo Vega Cuevas and his co-defendants have not consented to release of the requested information—to the extent it exists—nor are they deceased, disclosure under these circumstances would reasonably be expected to result in an unwarranted invasion of their personal privacy. Consequently, the Criminal Division concluded that Pablo Vega Cuevas and his co-defendants' privacy interests must prevail and, therefore, declined to search for or acknowledge the existence of records.

29.     Because the Criminal Division determined that it was not required to search for records that are categorically exempt or acknowledge the existence of records pursuant to Exemptions 6 and 7(C), there is necessarily no information that can be segregated and disclosed.

**CONCLUSION**

30.     As discussed above, the Criminal Division has determined that it has no obligation acknowledge or search for records that are exempt pursuant to FOIA Exemptions (b)(3), (b)(6), and (b)(7)(C). Because the Criminal Division determined that all responsive information is exempt, there is necessarily no information that can be segregated and disclosed.

31.     The Criminal Division reasonably foresees that disclosure of information confirming or denying the existence of a request submitted pursuant to an MLAT would also harm important interests protected by Exemption 3 and the FOIA. For example, disclosure in this circumstance would undermine the integrity of the U.S. Government's treaty commitments as ratified and made effective under both international and domestic law. Thereby undercutting the U.S. Government's ability to honor its legal obligations. Conversely, the disclosure of the information sought by Plaintiffs, which the United States has promised the United Mexican States it would keep confidential, could impair the mutual enforceability aspect of the MLAT and hinder Mexico's willingness to comply with its terms, including in response to future MLAT requests from the United States. Finally, disclosure would foreseeably harm the credibility of the United States and its international legal commitments in the eyes of future bilateral and multilateral negotiating partners, and thereby erode the U.S. Government's capacity to effectively negotiate future binding agreements.

32.     Plaintiffs aver in their FOIA request that "[they] do not seek information collected by US agents during their investigation of the Vega case (whether or not that was provided to the Mexican government): sensitive evidence, photographs, results of wiretaps, private data about the individuals involved, or any other materials gathered for law enforcement purposes." See Exhibit A. Nevertheless, the types of documents sought here by Plaintiffs would generate personal information about Pablo Vega Cuevas and his co-defendants, including whether they

may be prospectively involved in the subject of an ongoing Mexican government investigation, or whether the Mexican government has made a formal request for access to records related to them pursuant to an MLAT, letters rogatory, and/or other diplomatic communications, including bilateral communications between the Mexican and United States governments as well as US inter-agency communications related to Mexican requests for assistance, to include, emails, letters, diplomatic exchanges, memoranda, telephone transcripts, meeting minutes, talking points, reports, legal records and intelligence information. As previously noted, individuals have a privacy interest even as to information which has previously been publicly disclosed. See U.S. Dept. of Justice v. Reporter's Committee for Freedom of Press, 489 U.S. 749, 763-764, 109 S. Ct. 1468, 1482-83, 103 L. Ed. 2d 774 (1989). There is no cognizable public interest here, nor have Plaintiffs established one, that would outweigh the privacy interests of Pablo Vega Cuevas and his co-defendants.

33.     The Criminal Division reasonably foresees that disclosure of information confirming or denying the existence of a request for assistance submitted by the Mexican government pursuant to an MLAT, letters rogatory and/or other diplomatic communications, including bilateral communications between the Mexican and United States governments as well as US inter-agency communications related to Mexican requests for assistance, to include, emails, letters, diplomatic exchanges, memoranda, telephone transcripts, meeting minutes, talking points, reports, legal records and intelligence information, would also harm important interests protected by Exemptions 6 and 7(C). An agency may use Exemption 6 to withhold "personnel and medical files . . . the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). See Rosenberg v. U.S. Department of Defense, 342 F. Supp. 3d 62, 92 (D.D.C. 2018) (upholding DOD's withholding of Gitmo

detainee information pursuant to Exemption 6, where agency explained that "release of this information would constitute a clearly unwarranted invasion of [the detainees'] personal privacy, particularly with respect to medical information and identifying numbers that can be tied to detainee conduct and health.").  Similarly, Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes," the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). These exemptions reflect a balance between "the privacy interests that would be compromised by disclosure" and "the public interest in release of the requested information." Reporters Committee for Freedom of the Press v. Federal Bureau of Investigation, __ F. Supp. 3d __, 2020 WL 1324397, at page 9 (March 20, 2020) (citing Sussman v. Dep't of Justice, 494 F. 3d 1106, 1115 (D.C. Cir. 2007). In Reporters Committee, the FBI asserted Exemptions 6 and 7(C) for records containing names of (1) FBI special agents and support personnel, (2) non-FBI federal government personnel, (3) third parties of investigative interest, (4) third parties merely mentioned, and (5) local law enforcement personnel. Id., at page 9. The court in Reporters Committee found that the FBI readily satisfied the "foreseeable harm" requirement where release of information about law enforcement and support personnel could often "subject them to annoyance and harassment in their official or private lives." Id., (citing Lesar v. Dep't of Justice, 636 F.2d 472, 487 (D.C. Cir. 1980). In Reporters Committee, the FBI declarant explained that publicity regarding which agents are working on any particular investigation "may seriously prejudice their effectiveness" and may result in "unnecessary, unofficial questioning as to their assistance," including individuals who "may carry a grudge" and thus "seek revenge" on agents and staff involved. In addition, FBI employees possess security clearances that give them access to classified material and systems; identifying certain FBI employees would subject them to

attention, targeting, and/or exploitation by "criminal elements, terrorists, and foreign intelligence services." Id., at page 9.

34.     Here, Plaintiffs seek information contained within an MLAT, letters rogatory, and/or other diplomatic communications, including bilateral communications between the Mexican and United States governments as well as US inter-agency communications related to Mexican requests for assistance, to include, emails, letters, diplomatic exchanges, memoranda, telephone transcripts, meeting minutes, talking points, reports, legal records and intelligence information. Undoubtedly, the records being sought would (if they exist) contain extensive personal information about Pablo Vega Cuevas, his co-defendants, Mexican prosecutors and law enforcement personnel, U.S. Federal law enforcement personnel and other third parties. For example, letters rogatory contain questions initially drafted and submitted by Mexican prosecutors and/or other law enforcement personnel, which are then transmitted to U.S. Federal law enforcement officials, who, acting on behalf of the Mexican government, will proceed to interview the named individuals identified by the Mexican government as targets, subjects, witnesses and/or other third parties, each of whom have some level of involvement or interest within the scope of the Mexican government's investigation. Once provided to the United States, these questions are then posed to individuals currently residing within the jurisdiction of the United States by U.S. Federal law enforcement personnel. Without question, letters rogatory, as well as the other types of diplomatic information being sought by Plaintiffs will contain information related to not only Pablo Vega Cuevas, his co-defendants, Mexican prosecutors and law enforcement personnel, U.S. Federal law enforcement personnel and other third parties. Identifying the afore-mentioned individuals would likely subject them to undue annoyance or harassment in their official or private lives. Moreover, identifying certain Mexican federal law

enforcement personnel and/or employees may also subject them to attention, targeting, and/or exploitation by criminal elements, terrorists, and foreign intelligence services.

       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

       Executed this 4th day of March 2021.

_____
John E. Cunningham III