STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892281892)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-71647164
Facsimile: (415) 436-72347234
jevechius.bernardoni@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and ANAYANSI DIAZ-CORTES,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, and UNITED STATES DEPARTMENT OF STATE,<br><br>Defendants. | Case No. 3:20-cv-06649-JSC<br><br>**Declaration of Angela D. Hertel, Drug Enforcement Administration** |

### DECLARATION OF ANGELA D. HERTEL FROM DRUG ENFORCEMENT ADMINISTRATION

I, Angela D. Hertel, hereby make the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am currently the Unit Chief of the Freedom of Information/Privacy Act Legal and External Affairs Unit ("**FSRL**"), part of the Freedom of Information/Privacy Act Section ("**FSR**"), of the United States Department of Justice ("**DOJ**"), Drug Enforcement Administration ("**DEA**"), located at DEA's Headquarters in Arlington, Virginia. I have served in this capacity since October 1, 2020. Before then I served as Acting Unit Chief of the Freedom of Information/Privacy Act Unit (**"FSRF"**) from May 2019 until FSRF was reorganized as FSR in October 2020. I have been a DEA employee since

1

October 2018.  Prior to becoming a DEA employee, I was a supervisory contract paralegal supporting FSRF since September 2009.

2. As the Unit Chief, I, in part, oversee the processing of certain requests to DEA under the Freedom of Information Act ("**FOIA**"), 5 U.S.C. § 552, and the Privacy Act ("**PA**"), 5 U.S.C. § 552a (cited together as "**FOIA/PA**").  Due to my experience in responding to requests for DEA records since 2009 and the nature of my official duties, I am familiar with the policies and practices of the DEA related to search, process, and disclosure of DEA information under the FOIA and PA.  FSR is (and FSRF was before its reorganization into FSR) the DEA office responsible for the receipt, process, and disclosure of DEA information requested pursuant to the FOIA/PA.

3. In preparing this declaration, I have read and am familiar with the complaint in the above-titled action.

4. All statements I make in this declaration are true and correct to the best of my knowledge, information, and belief and are based on my personal knowledge as well as information acquired by me in the course of performing my official duties.

**DEA'S LAW ENFORCEMENT MISSION**

5. DEA's mission includes enforcing the controlled substances laws and regulations of the United States.  DEA's investigative jurisdiction derives from the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. ("**the CSA**" or "**the Act**").  The CSA authorizes DEA to enforce the Act through the investigation of trafficking in controlled substances and the violators who operate at interstate and international levels.  This mission involves conducting criminal investigations to assist prosecutions of organizations and principal members of organizations involved in the growing, manufacture, or distribution of controlled substances appearing in or destined for illicit traffic in the United States.  Among other functions, DEA is authorized to cooperate with counterpart agencies abroad to combat illegal drug trafficking and to exchange information in support of drug traffic prevention and control.  DEA has foreign offices in countries throughout the world.

**DEA'S RECEIPT OF PLAINTIFFS' REQUEST FOR RECORDS
AND SUBSEQUENT CORRESPONDENCE**

6. On June 9, 2020, an individual identifying herself as Anayansi Diaz-Cortes, a reporter from the Center for Investigative Reporting, sent to DEA via email a FOIA request (the "**Request**").

7. A true and accurate copy of the Request is attached to this declaration as <u>Exhibit A</u>.

8. The Request, dated June 9, 2020, sought generally "all records related in whole or in part to a request for assistance from the Mexican government - whether by the Mutual Legal Assistance Treaty (MLAT), letter rogatory, or some other diplomatic communication - regarding the criminal case 'United States of America v. Pablo Vega Cuevas et al.' (14 CR 705)" created during the period of March 1, 2015, to April 1, 2018.

9. The Request contained additional statements about the documents being sought, stating:

> We seek documents and communications . . . that pertain to Mexico's interest in accessing information obtained in the course of the Vega investigation.  Responsive records should include bilateral communications between the Mexican and United States governments as well as any US inter-agency communications following Mexico's request for assistance. The types of documents requested include, but are not limited to, emails, letters, diplomatic exchanges, memoranda, telephone transcripts, meeting minutes, talking points, reports, legal records, and intelligence information.

10. The Request then specifically excluded some documents, stating:

> Please omit from your search and review all copies of press and media reports as well as all press statements and press releases.  We do <u>not</u> seek information collected by US agents during their investigation of the Vega case (whether or not that was provided to the Mexican government): sensitive evidence, photographs, results of wiretaps, private data about the individuals involved, or any other materials gathered for law enforcement purposes.

(emphasis in original).  The Request then stated, "[r]ather, this FOIA request concerns the correspondence between Mexico and the United States about whether Mexico could have access to the material for its own, internal law enforcement purposes."

11. The Request did not include any evidence that any of the individuals charged in "United States of America v. Pablo Vega Cuevas et al.' (14 CR 705)" were deceased or that any such individuals consented to the release to Plaintiffs of records responsive to the Request.

3

12. DEA received the Request on June 9, 2020.

13. By correspondence dated July 30, 2020, (the "**Response**"), DEA responded to the Request.

14. A true and accurate copy of the Response is attached to this declaration as <u>Exhibit B</u>.

15. In the Response, DEA did not confirm or deny the existence of any records responsive to the Request and stated, *inter alia*, that it was refusing to conduct a search for the records sought in the Request, specifically stating:

> To the extent that non-public responsive records exist, without consent, proof of death (*e.g.*, a copy of a death certificate or an obituary), or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy. *See* 5 U.S.C. § 552(b)(7)(C). Because any non-public records responsive to your request would be categorically exempt from disclosure, this office is not required to conduct a search for the requested records.

16. On or about August 13, 2020, Plaintiffs filed an appeal in response to DEA's determination (the "**Appeal**") to the United States Department of Justice Office of Information Policy ("**OIP**").

17. A true and accurate copy of the Appeal is attached to this declaration as <u>Exhibit C</u>.

18. In sum, the Appeal contended that the DEA's described *Glomar* response was not proper because, allegedly, (1) no cognizable privacy harm would result from disclosure of the records sought and (2) the public interest outweighed any privacy interests.

19. By correspondence dated September 22, 2020, OIP affirmed DEA's determination of the Request. OIP stated, in part:

> To the extent that non-public responsive records exist, disclosure of law enforcement records concerning third-party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy. <u>See</u> 5 U.S.C. § 552(b)(7)(C). Further, it is reasonably foreseeable that releasing any non-public records, to the extent such records exist, would harm the interests protected by this exemption. Because any non-public records responsive to your request would be categorically exempt from disclosure, DEA properly asserted Exemption 7(C) and was not required to conduct a search for the requested records. <u>See, e.g.</u>, <u>DOJ v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749, 780 (1989) (holding "as a categorical matter" that release of investigatory records concerning a third party "can reasonably be expected to invade" that person's privacy and that such an invasion is unwarranted in the absence of an overriding public interest).

4

20. A true and accurate copy of the OIP correspondence dated September 22, 2020, is attached to this declaration as Exhibit D.

21. On March 3, 2021, DEA supplemented the Response to Plaintiffs, a true copy of which is attached as Exhibit E, stating in part:

> Regarding your request for records, please be advised that, in supplementation to DEA's response dated July 30, 2020, that, *inter alia*, any non-public records responsive to your request would be categorically exempt from disclosure, we are expressly refusing to confirm or deny the existence of any records that may be responsive to the request pursuant to Exemptions 6 & 7(C) of the FOIA. *See* 5 U.S.C. § 552(b)(6), (7)(C). Even to acknowledge the existence of law enforcement records on another individual could reasonably be expected to constitute an unwarranted invasion of personal privacy. Further, we are also expressly refusing to confirm or deny the existence of records that may be responsive to the request as they relate to any request under the Mutual Legal Assistance Cooperation Treaty with Mexico, U.S.-Mexico, Dec. 9, 1987, TREATY DOC. NO. 100-13 (1991) pursuant to Exemption 3 of the FOIA. *See* 5 U.S.C. § 552(b)(3). Even to acknowledge the existence of any such records would run afoul of the treaty.

**DEA'S JUSTIFICATION FOR REFUSING TO ACKNOWLEDGE AND TO SEARCH FOR ANY RESPONSIVE RECORDS UNDER EXEMPTIONS 6 AND 7(C)**

22. The FOIA, 5 U.S.C. § 552(b)(7)(C), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. The FOIA, 5 U.S.C. § 552(b)(6), protects information about individuals in personnel and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. Although the balancing test for exemption 6 uses the standard of "would constitute a clearly unwarranted invasion of personal privacy" and the test for exemption 7(C) uses the standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is similar enough to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

23. DEA's investigative jurisdiction derives from the CSA, which authorizes DEA to enforce 21 U.S.C. § 801, *et seq.* through the investigation of incidences involving the trafficking in controlled

substances, dangerous drugs, and precursor chemicals. The Request seeks records concerning an alleged request for assistance from the Mexican government via diplomatic channels regarding the criminal case of "United States of America v. Pablo Vega Cuevas et al.' (14 CR 705)" (the "**Case**"). The Case implicates DEA's law enforcement authority under the CSA. For example, a DEA Special Agent signed the criminal complaint filed in the Case on or about December 8, 2014, alleging violations by the Defendants of the CSA.

24. Any records responsive to the Request would consist of records and/or information compiled for law enforcement purposes. These records would have been created or maintained by core mission DEA employees in the course of their official duties enforcing the CSA. Moreover, any records sought would have a rational nexus to DEA's law enforcement duties, such as the law enforcement considerations of sharing information about an investigation and ongoing case with Mexico and of cooperating (or not) with a foreign power's own law enforcement efforts related to a DEA investigation. Moreover, in addition to having a nexus to DEA's law enforcement duties, any responsive requested materials also would have a nexus to the law enforcement duties of Mexico, which the Request admits, stating it seeks information gathered for Mexico's "own, internal law enforcement purposes." Any records sought therefore would readily meet the threshold requirement of exemption 7.

25. Upon receiving a FOIA request for law enforcement records concerning third parties, it is DEA's standard practice to deny the request, neither affirming nor denying the existence of responsive records and refusing to conduct a search for any requested records, unless the requester provides sufficient proof of death, submits a sufficient authorization by the third party at issue to disclose the records, or demonstrates a public interest that outweighs any privacy interests. If DEA denied the existence of such records in cases when no responsive records existed, it could not then, in cases where responsive records did exist, neither affirm nor deny the existence of such records without in fact disclosing the existence of responsive records. Consequently, DEA must consistently neither confirm nor deny responsive records in situations where the mere acknowledgment of responsive documents would disclose information protected from disclosure by the FOIA.

26. According to public court filings by the Department of Justice, the defendants in the Case (the "**Defendants**") include or have included (1) Pablo Vega Cuevas, (2) Arturo Martinez, (3) Alexander

Figueroa, (4) Eliseo Betancourt-Pereira, (5) Santos Wilfredo Sorto Hernandez, (6) Roberto Sanchez, (7) Jose Rodriguez, and (8) Isaias Mandujano. Public court filings indicate that, as of January 29, 2021, at least four Defendants have not pleaded guilty to or been convicted of any crime charged in the Case, one Defendant was dismissed from the Case before any plea or conviction, and three Defendants have been sentenced.

27. The scope of the Request is circumscribed by the Case: "United States of America v. Pablo Vega Cuevas et al.' (14 CR 705).'" The Case, as a criminal proceeding, is circumscribed by specific individuals charged—the eight Defendants. Consequently, the Request categorically seeks records concerning the Defendants. Every document responsive to the Request would necessarily reveal personal information of the Defendants, such as whether the Defendants are associated with the alleged Mexican investigation. In fact, even acknowledging the existence of documents responsive to the Request would reveal personal information of the Defendants, such as whether or not they are associated with a request for foreign assistance by the Mexican government for "its own internal law enforcement purposes" (as stated by the Request) related to the Case. Because the scope of the Request itself is circumscribed by the Case and because even acknowledging the existence of responsive records would invade the Defendants' privacy interests, the Request's claimed exclusion of "private data" is ineffective at vitiating the application of exemptions 6 and 7(C).

28. Neither the Request nor the Appeal sets forth evidence, nor is DEA aware of any, where the Department of Justice, much less the DEA, has officially acknowledged to the public the subject of the Request, namely any request for assistance by the Mexican government regarding the Case and the contents of any such request for assistance. Consequently, the Request categorically seeks information that has not been officially acknowledged, such as whether Mexico has asked the United States for assistance regarding the Case for "its own, internal law enforcement purposes" and, if so, what information, if any, the United States government sent in response to such a request. Any confirmation of the existence of records in response to the Request and any responsive documents themselves would therefore necessarily introduce new information concerning the Defendants that has not been officially acknowledged.

29. The fact that four of the Defendants have apparently pleaded guilty to criminal conduct of some degree in the Case does not vitiate their respective privacy interests implicated by the Request. As demonstrated above, the Request categorically seeks new information beyond that which has been officially acknowledged in the Case.

30. The acknowledgement of the existence of any records responsive to the Request and/or their disclosure could reasonably be expected to subject the Defendants to unwarranted invasions of personal privacy. Acknowledgment or disclosure could reasonably be expected to trigger questions about the Defendants' association in criminal activity or their roles in investigations or prosecutions beyond officially confirmed information in the Case. Moreover, release of records could reasonably be expected to link the Defendants to criminal activity to a greater or different degree than exists in the official public record. Publicly releasing any information responsive to the Request could reasonably be expected to subject the Defendants to harassment and embarrassment, as well as to undue public attention. For example, the Defendants being associated with an investigation by another sovereign power—Mexico—that relates to the Case is a significant matter of personal privacy, the disclosure of which could reasonably be expected to subject the Defendants (and potentially their families and known associates) to increased public attention—particularly by those interested in any relation between the Defendants and the Mexican government or Mexico, in general. It is reasonably foreseeable that the aforementioned harms to the privacy interests of Defendants would result from acknowledging any records responsive to the Request and/or disclosing any such records.

31. None of the Defendants consented to the DEA to disclose information in response to the Request.

32. The Request does not provide any information that any of the Defendants are deceased. Moreover, DEA conducted a search to determine whether or not the Defendants are deceased. Specifically, DEA reviewed the public court docket in the Case as of January 29, 2021, and no entries reflect that any of the Defendants became deceased while defendants in the Case. DEA has not found any information establishing that the Defendants in the Case are deceased.

33. After considering the matter, DEA has not identified (nor have Plaintiffs provided any facts supporting) any relevant public interest in the release of the requested records that would outweigh the Defendants' substantial privacy interests in DEA not acknowledging or releasing any such records.

34. The Plaintiffs have neither alleged nor set forth any evidence that information responsive to the Request is necessary to confirm or refute alleged wrongdoing by the United States government.

35. The claimed public interests set forth in the Appeal of (1) "shed[ding] light on the U.S. Investigation of the Guerreros Unidos and the organization's involvement in the Iguala forced disappearance" and (2) "knowing that the investigation underlying the *Cuevas* case was comprehensive and was reported on accurately" are not congruent with the scope of the Request. For example, the Request specifically seeks information regarding the Case—not specifically regarding any investigation by the United States government into the Iguala matter—and the fact that the Request seeks information about a request for assistance from Mexico does not implicate whether the "investigation underlying the *Cuevas* case," a prosecution brought by the United States government, "was comprehensive and reported on accurately." Even if the claimed interests were congruent with the scope of the Request, they would not outweigh the Defendants' substantial privacy interests in DEA not acknowledging or releasing any responsive records. For example, information concerning whether and how the United States responded to any relevant request for assistance would not outweigh such privacy interests.

36. Further, the Request and Appeal purport to invoke some claimed public interests associated with the conduct of the Mexican government—not the United States government. For example, the Request and Appeal note that the Iguala incident took place in Mexico; the subject of the Request is an alleged request for assistance *from Mexico* concerning the Case and admittedly concerns "whether Mexico could have access to the material for its own, internal law enforcement purposes;" and the Request and Appeal repeatedly suggest that responsive documents would shed light on alleged improprieties by Mexican officials. There is no cognizable public interest under the FOIA in revealing the activities of the Mexican government that outweigh the privacy interests of the Defendants.

37. Because acknowledging the existence of responsive records is exempt from disclosure and any records responsive to the Request would be categorically exempt from disclosure, DEA had no obligation to search for any responsive records in response to the Request and did not conduct a granular

1  segregability review.  No segregability would be possible.  The information that Plaintiffs have requested
2  about the Defendants could not be segregated in a way that would not implicate their privacy interests.
3  For example, merely acknowledging the existence of responsive records would impinge on the
4  Defendants' privacy interests and, even if responsive records were acknowledged, redacting the
5  Defendants' names from documents would be pointless when Plaintiffs know that any records provided
6  were associated with the Case and therefore with the Defendants.
7      38.    DEA was justified in refusing to acknowledge whether or not responsive records existed
8  pursuant to exemptions 6 and 7(C) and in refusing to search for any requested records.

**DEA'S JUSTIFICATION FOR REFUSING TO ACKNOWLEDGE AND TO SEARCH FOR RECORDS CONCERNING ANY MLAT REQUEST PURSUANT TO EXEMPTION 3**

11      39.    Exemption 3 under the FOIA allows for the withholding of information prohibited from
12  disclosure by another federal statute provided that one of two disjunctive requirements are met:  the statute
13  either "(A)(i) requires that the matters be withheld from the public in such a manner as to leave no
14  discretion on the issue, or (A)(ii) establishes particular criteria for withholding or refers to particular types
15  of matters to be withheld."
16      40.    The Request seeks generally "all records related in whole or in part to a request for
17  assistance from the Mexican government - whether by **the Mutual Legal Assistance Treaty (MLAT)**,
18  letter rogatory, or some other diplomatic communication - regarding the criminal case 'United States of
19  America v. Pablo Vega Cuevas et al.' (14 CR 705)" from March 1, 2015, to April 1, 2018. (emphasis
20  added).
21      41.    The MLAT cited in the Request refers to the Mutual Legal Assistance Cooperation Treaty
22  with Mexico, U.S.-Mexico, Dec. 9, 1987, TREATY DOC. NO. 100-13 (1991)). *See* Exhibit C (the Appeal,
23  p.3, n. 1) (describing the MLAT as the 1987 treaty).  The MLAT was properly ratified by the Senate and
24  is presently in effect.  A true copy of the MLAT is attached hereto as <u>Exhibit F</u>.
25      42.    The MLAT imposes confidentiality restrictions on the state receiving the request for
26  assistance.
27      43.    Article 4, § 5 of the MLAT provides as follows:

> The requested State shall keep confidential a request and its contents unless otherwise authorized by the Coordinating Authority of the requesting Party. If the request cannot be executed without breaching the required confidentiality, the Coordinating Authority of the requested Party shall so inform the Coordinating Authority of the requesting Party, which shall then determine whether the request should nevertheless be executed.

44. Article 6 of the MLAT contains other limitations on the use of information or evidence obtained under the MLAT.

45. As stated above, neither the Request nor the Appeal sets forth any evidence, nor is DEA aware of any, where the Department of Justice, much less the DEA, has publicly acknowledged any request for assistance by the Mexican government regarding the Case (or the contents of any such request) or where the Mexican government has authorized the United States to disclose publicly the existence of any such request or its contents.

46. DEA acknowledging that it had records responsive to the Request related to any request for assistance under the MLAT would necessarily disclose the existence of a request for assistance under the MLAT and information about the subject matter of the request, namely that the request "regard[ed]" the specific matter of the Case. Not only would such disclosure be prohibited under the MLAT, but it would also foreseeably harm interests protected by the MLAT. It would demonstrate an unwillingness on the part of the DEA to take appropriate measures to abide by the confidentiality provisions of the MLAT with Mexico and therefore risk hindering the willingness of Mexico to both request and provide information under the MLAT in the future. Therefore, DEA is justified, pursuant to exemption 3, in its refusal to acknowledge and search for any records as they relate to a request for assistance by Mexico under the MLAT.

47. Because DEA has no obligation to search for or acknowledge records concerning a request for assistance by Mexico under the MLAT in response to the Request, it was justified in not conducting a granular segregability review of any responsive records.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 4, 2021.

ANGELA HERTEL
Digitally signed by ANGELA HERTEL
Date: 2021.03.04 07:18:41 -05'00'

_____
ANGELA D. HERTEL
Chief, Legal and External Affairs Unit
Freedom of Information and Privacy Act Section
Drug Enforcement Administration