1  STEPHANIE M. HINDS (CABN 154284)
   Acting United States Attorney
2  SARA WINSLOW (DCBN 457643)
   Chief, Civil Division
3  JEVECHIUS D. BERNARDONI (CABN 281892)
   Assistant United States Attorney
4
        450 Golden Gate Avenue, Box 36055
5       San Francisco, California 94102-3495
        Telephone: (415) 436-7164
6       Facsimile: (415) 436-7234
        jevechius.bernardoni@usdoj.gov
7
   Attorneys for Federal Defendants
8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11

12  THE CENTER FOR INVESTIGATIVE          Case No. 3:20-cv-06649-JSC
    REPORTING and ANAYANSI DIAZ-
13  CORTES,                               **DEFENDANTS UNITED STATES
                                          DEPARTMENT OF JUSTICE AND UNITED
14          Plaintiffs,                   STATES DEPARTMENT OF STATE'S REPLY
                                          IN SUPPORT OF MOTION FOR SUMMARY
15      v.                                JUDGMENT AND OPPOSITION TO
                                          PLAINTIFFS' CROSS-MOTION FOR
16  UNITED STATES DEPARTMENT OF           SUMMARY JUDGMENT**
    JUSTICE, and UNITED STATES
17  DEPARTMENT OF STATE,                  Date: June 3, 2021
                                          Time: 9:00 a.m.
18          Defendants.                   The Honorable Jacqueline Scott Corley

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I. Defendants Made Proper *Glomar* Responses Under FOIA Exemptions (b)(3), (b)(6), And (b)(7)(C) ...................................................................................................................3

    A. Defendants Appropriately Issued *Glomar* Responses And Refused To Search Under Exemption (b)(3) Because There Is No Evidence That The Mexican Government Disclosed A Theoretical Request For Assistance Under The U.S.-Mexico MLAT Regarding The Criminal Case *Pablo Vega Cuevas* ........................3

    B. Even If There Was Record Evidence Suggesting That Mexico Disclosed The Existence Of A Request For Assistance Under The U.S.-Mexico MLAT, Defendants Can Still Rely On Exemption (b)(3) ..................................................5

    C. Plaintiffs' Late Unilateral Narrowing Of Their FOIA Requests Is Procedurally Ineffective And, As A Result, Plaintiffs Effectively Fail To Oppose Defendants' Motion For Summary Judgment.................................................6

    D. Under Exemptions (b)(6) And (b)(7)(C), The *Pablo Vega Cuevas* Defendants Have Strong Privacy Interests And Any Countervailing Public Interests Are Insufficient ............................................................................................8

II. Plaintiffs' Invocation Of The Official Acknowledgment Doctrine Is Legally Incorrect And Factually Misleading.............................................................................................12

    A. Third-Party Disclosures Are Legally Insufficient To Invoke The Official Acknowledgment Doctrine ...............................................................................14

    B. The Documents Introduced By Plaintiffs Do Not Match The Information Sought By The FOIA Requests...........................................................................15

III. Plaintiffs' FOIA Request To EOUSA Does Not Reasonably Describe The Records Sought And Does Not Comply With EOUSA's Regulations And Guidance...............17

IV. Conclusion .....................................................................................................................19

1

# <u>TABLE OF AUTHORITIES</u>

2

## CASES

3
*ACLU Found. v. DOJ*,
    418 F. Supp. 3d 466 (N.D. Cal. 2019) ................................................................................ 14

4

*ACLU v. CIA*,
5    710 F.3d 422 (D.C. Cir. 2013) ...................................................................................... 16

6
*Afshar v. Dep't of State*,
    702 F.2d 1125 (D.C. Cir. 1983) .................................................................................... 16

7
*Anguiano v. United States Immigration and Customs Enforcement*,
8    No.18-cv-01782-JSC, 2018 U.S. Dist. LEXIS 193479 (N.D. Cal. Nov. 13, 2018) ........... 12

9
*Antonelli v. ATF*,
    No. 04-1180, 2006 U.S. Dist. LEXIS 3156 (D.D.C. Mar. 17, 2006) ................................. 19

10
*Bloeser v. DOJ*,
11    811 F. Supp. 2d 316 (D.D.C. 2011) .............................................................................. 18

12
*Bothwell v. CIA*,
    No. 13-cv-05439-JSC, 2014 U.S. Dist. LEXIS 144151 (N.D. Cal. Oct. 9, 2014)................. 13, 15, 16

13
*Branch v. FBI*,
14    658 F. Supp. 204 (D.D.C. 1987) .................................................................................. 10

15
*Cameranesi v. Dep't of Def.*,
    856 F.3d 626 (9th Cir. 2017) ......................................................................................... 9

16
*Citizens for Free Speech, LLC v. County. Of Alameda*,
17    No. C 18-00834 SBA, 2019 U.S. Dist. LEXIS 234441 (N.D. Cal. Jan. 14, 2019) ........... 10

18
*Cottone v. Reno*,
    193 F.3d 550 (D.C. Cir. 1999) ..................................................................................... 16

19
*Ctr. for Investigative Reporting v. FBI*,
20    No. 19-cv-04541-LB, 2021 U.S. Dist. LEXIS 31531 (N.D. Cal. Feb. 18, 2021)................. 13, 14, 15

21
*Ctr. for Investigative Reporting v. United States Dep't of the Treasury*,
    No. 19-cv-08181-JCS, 2021 U.S. Dist. LEXIS 13575 (N.D. Cal. Jan. 22, 2021) .............. 16

22
*Dongkuk Int'l, Inc. v. United States DOJ*,
23    204 F. Supp. 3d 18 (D.D.C. 2016) ............................................................................... 14, 17

24
*Elec. Frontier Found. v. DOJ*,
    No. 4:11-cv-05221-YGR, 2014 U.S. Dist. LEXIS 110785 (N.D. Cal. Aug. 11, 2014) .............. 13, 14

25
*Fitzgibbon v. CIA*,
26    911 F.2d 755 (D.C. Cir. 1990) ..................................................................................... 10, 17

27
*Grynberg* v. *United States DOJ*,
    302 F. Supp. 3d 532 (S.D.N.Y. 2018)........................................................................... 17

28

*Landano v. DOJ*,
    956 F.2d 422 (3d Cir. 1992) ................................................................................................ 11

*Mariscal v. Graco, Inc.*,
    52 F. Supp. 3d. 973 (N.D. Cal. 2014) .............................................................................. 8, 10

*Nat'l Archives & Records Admin. v. Favish*,
    541 U.S. 157 (2004) ..................................................................................................... 9, 12

*Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement*,
    No. 16-cv-387 (KBF), 2017 U.S. Dist. LEXIS 66429 (S.D.N.Y. Aug. 19, 2017) ........................... 7

*Nurse v. Sec'y of the Air Force*,
    231 F. Supp. 2d 323 (D.D.C. 2002) ....................................................................................... 18

*Painting & Drywall Work Preservation Fund v. HUD*,
    936 F.2d 1300 (D.C. Cir. 1991) .............................................................................................. 9

*Phillips v. ICE*,
    385 F. Supp. 2d 296 (S.D.N.Y. 2005) .................................................................................... 11

*Public Citizen v. Dep't of State*,
    11 F.3d 198 (D.C. Cir. 1993) .......................................................................................... 13, 14

*Recycle for Change v. City of Oakland*,
    856 F.3d 666 (9th Cir. 2017) ............................................................................................... 10

*Rojas v. FAA*,
    941 F.3d 392 (9th Cir. 2019) ................................................................................................. 9

*Schiffer v. FBI*,
    78 F.3d 1405 (9th Cir. 1996) ............................................................................................ 9, 10

*Serv. Women's Action Network v. DOD*,
    570 Fed. App'x. 54 (2d Cir. 2014) ......................................................................................... 7

*Sims v. CIA*,
    642 F.2d 562 (D.C. Cir. 1980) ............................................................................................... 8

*Wilson v. CIA*,
    586 F.3d 171 (2d Cir. 2009) ................................................................................................. 14

*Women's Action Network v. DOD*,
    No. 11-cv-1534, 2013 U.S. Dist. LEXIS 37655 (D. Conn. Mar. 19, 2013) ................................. 7

Plaintiffs' opposition and cross-motion for summary judgment ("Pls.' Br.") is a scattershot of misleading factual observations, misapplied legal doctrines, and ineffectual attempts at revising the FOIA Requests at issue in this lawsuit.[1]  Those irrelevant and faulty arguments are decoupled from the issues actually before the Court and should be rejected.  As discussed below, the U.S.-Mexico MLAT prevents Defendants from confirming or denying the existence of any theoretical request for assistance made pursuant to the MLAT regarding the criminal case *Pablo Vega Cuevas*.  Defendants properly refused to do so pursuant to Exemption (b)(3).  Further, Defendants cannot confirm or deny the existence of any records sought through Plaintiffs' FOIA Requests (whether related to theoretical requests for assistance by way of the U.S.-Mexico MLAT, "letter[s] rogatory," or "some other diplomatic communication[s]") without violating the *Pablo Vega Cuevas* defendants' strong privacy interests, which are shielded by Exemptions (b)(6) and (b)(7)(C), in not being associated with alleged criminal activity.

First, Plaintiffs introduce ***zero evidence*** that the Mexican Government disclosed the existence of a request for assistance under the U.S.-Mexico MLAT "regarding the criminal case 'United States of America v. Pablo Vega Cuevas et al.' (14 CR 705)," which is the information sought by the FOIA Requests at issue.  Instead, Plaintiffs argue that the Mexican Government acknowledged its investigation into the disappearance of 43 students in Ayotzinapa, Mexico, and that Mexico's Fiscalía General de la República published its Ayotzinapa disappearance investigation file on a public-facing website.  But Plaintiffs' observations regarding the Ayotzinapa investigation file are irrelevant; the scope of this FOIA lawsuit is circumscribed by the FOIA Requests, each of which seeks records regarding the criminal case *Pablo Vega Cuevas*, not the Ayotzinapa disappearance, and the documents allegedly from the Ayotzinapa investigation file attached to Plaintiffs' brief never mention *Pablo Vega Cuevas*.  Plaintiffs cannot buoy their case by mischaracterizing their FOIA Requests as seeking information about the Ayotzinapa case when they instead seek information about the *Pablo Vega Cuevas* case.

Second, even if Mexico's purported statements regarding the Ayotzinapa disappearance were relevant—and they are not—Exemption (b)(3) would still prevent Defendants from confirming or denying the existence of any theoretical request(s) for assistance under the U.S.-Mexico MLAT.  Under the plain

---

[1] Capitalized terms not defined herein shall have the meaning given to them in Defendants' summary judgment motion.  *See* ECF No. 20.

terms of the U.S.-Mexico MLAT, Defendants have no discretion to disclose either the existence or the contents of a request for assistance "unless otherwise authorized" by Mexico.  Even assuming Mexico had made public statements acknowledging the existence of a request for assistance through the U.S.-Mexico MLAT related to the criminal case *Pablo Vega Cuevas*—and nothing in the record supports that conclusion—those statements would have no impact whatsoever on the United States Government's ongoing confidentiality obligations under the U.S.-Mexico MLAT.  The United States could disclose the existence of such a theoretical request for assistance only if Mexico formally and specifically authorized it to do so, and Plaintiffs introduce no evidence that Mexico has authorized Defendants to disclose any information whatsoever.  In any event, the information sought by Plaintiffs goes well beyond the existence of a purported request for assistance under the U.S.-Mexico MLAT, and there is no record evidence that the Mexican Government has ever placed that information in the public domain.

Third, Plaintiffs' late attempt to narrow their FOIA Requests is procedurally improper, substantively unfair to Defendants, and judicially inefficient.  The end result of that attempt is that Plaintiffs fail to substantively oppose Defendants' motion for summary judgment with respect to Exemptions (b)(6) and (b)(7)(C).  Whereas Defendants moved for summary judgment on the pending FOIA Requests, Plaintiffs instead oppose summary judgment presuming that those FOIA Requests have been replaced with narrower ones.  Similar to their mischaracterization of the FOIA Requests as being about the Ayotzinapa case as opposed to the criminal case *Pablo Vega Cuevas*, Plaintiffs once again improperly try to change the FOIA Requests unilaterally in search of more favorable legal ground.

Fourth, in addition to being procedurally improper, Plaintiffs' attempted narrowing of the FOIA Requests is ineffective because it would not alleviate the privacy concerns of the *Pablo Vega Cuevas* defendants.  The *Pablo Vega Cuevas* defendants have strong privacy interests in not being associated with alleged criminal activity, and the mere confirmation that responsive records exist (much less the release of responsive records, albeit in the redacted form now sought by Plaintiffs) would violate those strong privacy interests.  Moreover, Plaintiffs failed to respond in their brief to this argument, which is the core reason justifying Defendants' *Glomar* responses under Exemptions (b)(6) and (b)(7)(C).  This point is, therefore, conceded.

Fifth, the alleged third-party disclosures by Mexico and U.S. Members of Congress are legally and factually insufficient to invoke the official acknowledgement doctrine.  Plaintiffs advanced essentially identical official acknowledgment arguments in two other Northern District of California cases in the past four months, and those arguments were rejected by Judge Beeler and Judge Spero.

Sixth, the EOUSA Request fails for the same reasons as the other FOIA Requests at issue in this lawsuit, and the Court does not need to expend additional effort addressing the unique issues presented by that request.  To the extent the Court wishes to do so, however, the EOUSA Request fails because it does not adequately describe the records sought and it ignores EOUSA's well-established and necessary regulations and guidance.  The EOUSA Request is not properly before the Court.

I.   **Defendants Made Proper *Glomar* Responses Under FOIA Exemptions (b)(3), (b)(6), And (b)(7)(C)**

A.   **Defendants Appropriately Issued *Glomar* Responses And Refused To Search Under Exemption (b)(3) Because There Is No Evidence That The Mexican Government Disclosed A Theoretical Request For Assistance Under The U.S.-Mexico MLAT Regarding The Criminal Case *Pablo Vega Cuevas***

There is nothing in the record before the Court demonstrating that Mexico disclosed a theoretical request for assistance pursuant to the U.S.-Mexico MLAT regarding the criminal case *Pablo Vega Cuevas*. Absent such evidence, Plaintiffs improperly attempt to redefine their FOIA Requests in a last-ditch effort to save their legal position and revive their FOIA Requests.  The Court should reject that move.

The Ayotzinapa investigation file exhibited by Plaintiffs and published on the Fiscalía General de la República's website consists of a heavily redacted, 639-volume file spanning thousands of pages. Plaintiffs extracted 63 pages from distinct parts of that online file, attached those almost entirely redacted pages to their brief without any context or explanation of how they fit into the broader Ayotzinapa investigation file, and now ask the Court to endorse Plaintiffs' speculation that the submitted documents reveal a request for assistance under the U.S.-Mexico MLAT regarding the criminal case *Pablo Vega Cuevas*.  But, neither Mexico's purported September 12, 2016 request for assistance nor any of the other documents from the Ayotzinapa investigation file that were submitted by Plaintiffs contain the words "Pablo," "Vega," or "Cuevas."  *See* Baranetsky Decl. Exs. 7 and 8.  And, with the exception of the commonplace name José, the unredacted names in the documents from the Ayotzinapa investigation file

that were submitted by Plaintiffs (*i.e.*, Abraham, Acevedo, Garc[], Arma[]) are not the names of any of the other co-defendants in *Pablo Vega Cuevas*.  *See* Baranetsky Decl. Exs. 7 and 8.  In other words, the purported September 12, 2016 request for assistance referenced by Plaintiffs refers only to the Ayotzinapa investigation, not the *Pablo Vega Cuevas* case, and therefore could, at most, support the allegation that Mexico sought assistance in "relation to the investigation of the acts against the students of the Raúl Isidro Burgos Rural Teachers' School of Ayotzinapa," not the criminal case *Pablo Vega Cuevas*.[2]   *See* Baranetsky Ex. 7.

In lieu of evidence in support of their actual FOIA Requests, Plaintiffs instead contend that the Mexican Government's purported acknowledgement of the existence of a request for assistance under the U.S.-Mexico MLAT regarding the Ayotzinapa disappearance suffices to save their FOIA Requests.  Pls.' Br. at 4, 7-8, 13, 15.   But, acknowledgment of a request for assistance regarding the Ayotzinapa disappearance is irrelevant.  This lawsuit is limited by the FOIA Requests Plaintiffs submitted.  Those FOIA Requests sought:

> all records related in whole or in part to a request for assistance from the Mexican government - whether by the Mutual Legal Assistance Treaty (MLAT), letter rogatory, or some other diplomatic communication - regarding the criminal case "United States of America v. Pablo Vega Cuevas et al." (14 CR 705).

Cunningham Decl. Ex. A; Hertel Decl. Ex. A; Stein Decl. Ex. A.  Thus, by definition, any responsive records at issue in this lawsuit must relate to the criminal case *Pablo Vega Cuevas*.

To square that circle, Plaintiffs now mischaracterize their FOIA Requests, claiming that they seek information regarding "the U.S. and Mexican response to the forced disappearance of forty-three Mexican students in 2014."  Pls.' Br. at 2.  But that is not what Plaintiffs' FOIA Requests say.  *See* Cunningham Decl. Ex. A; Hertel Decl. Ex. A; Stein Decl. Ex. A.  Thus, the information submitted by Plaintiffs is

---

[2] At one point, Plaintiffs baldly state "the Mexican Government itself has publicized that it has sought the United States Government's assistance with the Ayotzinapa matter through the MLAT ***and disclosed that its request pertained to the <u>Pablo Vega Cuevas</u> case.***"  Pls. Br. at 22 (emphasis added).  This is the ***only time*** in the brief that Plaintiffs contend that the Mexican Government has linked its request for assistance regarding the Ayotzinapa investigation with the *Pablo Vega Cuevas* case at issue in the FOIA Requests.  *See generally* Pls. Br.  However, Plaintiffs' brief includes no evidentiary citation in support of this assertion (Pls. Br. at 22), and there is no evidentiary support for this conclusion elsewhere in Plaintiffs' brief.  Plaintiffs' *ipse dixit* assertion is not an appropriate substitute for evidence.

irrelevant because, at best, it suggests that the Mexican Government submitted a request for assistance under the U.S.-Mexico MLAT in "relation to the investigation of the acts against the students of the Raúl Isidro Burgos Rural Teachers' School of Ayotzinapa."  Pls.' Br. at 7-8, 14-15 (quoting Baranetsky Decl. Ex. 7).  However, a purported request for assistance related to the investigation of the Ayotzinapa disappearance in Mexico is not the same as a theoretical request for assistance related to the criminal case *Pablo Vega Cuevas* in the Northern District of Illinois.

In short, Plaintiffs do not point to ***any evidence*** that the Mexican Government disclosed the existence of request(s) for assistance under the U.S.-Mexico MLAT "regarding the criminal case 'United States of America v. Pablo Vega Cuevas et al.' (14 CR 705)."  Therefore, Exemption (b)(3) squarely applies to the requested records.  Defendants cannot violate their treaty obligation to "keep confidential" the existence of a request for assistance from Mexico pursuant to the U.S.-Mexico MLAT regarding *Pablo Vega Cuevas*.  Defendants appropriately refused to confirm or deny the existence of such records.

### B.   Even If There Was Record Evidence Suggesting That Mexico Disclosed The Existence Of A Request For Assistance Under The U.S.-Mexico MLAT, Defendants Can Still Rely On Exemption (b)(3)

Even assuming Mexico disclosed the existence of a request for assistance under the U.S.-Mexico MLAT regarding the *Pablo Vega Cuevas* case, Defendants could still refuse to confirm or deny the existence of responsive records and refuse to conduct a search for responsive records under Exemption (b)(3) for at least two reasons.

First, the U.S.-Mexico MLAT states that Defendants "***shall*** keep confidential a request [made pursuant to the U.S.-Mexico MLAT] and its contents ***unless otherwise authorized*** by the Coordinating Authority of the requesting Party."  U.S.-Mexico MLAT, Art. 4 § 5 (emphasis added).  Plaintiffs provide no evidence that Mexico has authorized Defendants to disclose the existence of the theoretical request for assistance under the U.S.-Mexico MLAT referenced in Plaintiffs' FOIA Requests.  *See generally* Pls.' Br.  That the Mexican Government purportedly disclosed a request for assistance under the U.S.-Mexico MLAT does not relieve Defendants of their treaty obligations.  Defendants could not be certain of the rationale underlying Mexico's decision to acknowledge the existence of such a theoretical request, and disclosing information entrusted to the United States Government by a foreign partner through an express treaty provision without the clear and specific authorization called for under that treaty could cause undue

damage to American foreign relations. Simply put, "unless otherwise authorized" by Mexico, Defendants are treaty-bound to refuse disclosure of information regarding a request for assistance from Mexico made pursuant to the U.S.-Mexico MLAT. U.S.-Mexico MLAT, Art. 4 § 5.

Second, Defendants are not only obligated to keep confidential the existence of a request for assistance under the U.S.-Mexico MLAT, but also the contents of any such request. *Id.* Here, Plaintiffs seek information regarding not only the existence of such a theoretical request for assistance, they also seek detailed records about back-and-forth communications between Mexico and the United States regarding any such request. Even assuming Mexico waived its confidentiality rights with respect to the existence of a relevant request for assistance (and there is no record evidence that it has or that any such relevant request for assistance was made), Defendants are still required by the U.S.-Mexico MLAT to keep the contents of a request and any related back-and-forth communications confidential. *See id.* Whatever the Fiscalía General de la República contemplated when it may have posted the Ayotzinapa investigation file on its website, the extensive redactions in the documents submitted by Plaintiffs make clear that it did not intend for the contents of its alleged request for assistance to be disclosed. *See* Baranetsky Decl. Exs. 7 and 8. And, the submitted materials suggest that the Fiscalía General de la República wanted to keep back-and-forth communications between the United States and Mexico (if any) confidential because those communications were not included in the excerpts of the purported online Ayotzinapa investigation file furnished to the Court.

## C. Plaintiffs' Late Unilateral Narrowing Of Their FOIA Requests Is Procedurally Ineffective And, As A Result, Plaintiffs Effectively Fail To Oppose Defendants' Motion For Summary Judgment

Plaintiffs' brief, for the first time, "clarif[ies] that their request is narrowed to the subject headings and the dates of the responsive documents." Pls.' Br. at 10. Plaintiffs' attempted unilateral narrowing of their FOIA Requests in response to a summary judgment motion is improper and ineffective.[3]

---

[3] Not only is Plaintiffs' proposed narrowing improper, but Plaintiffs have apparently conceded that the records purportedly at issue in these summary judgment proceedings are not properly within the scope of their FOIA Requests. Here, Plaintiffs "concede[]" that "the requested records were 'compiled for law enforcement purposes'. . . ." Pls.' Br. at 16 n.4. But, each of the FOIA Requests *expressly excludes* "materials gathered for law enforcement purposes" from the scope of responsive records. *See* Cunningham Decl. Ex. A at 1 ("We do <u>not</u> seek . . . materials gathered for law enforcement purposes.") (emphasis in original); Hertel Decl. Ex. A at 1 (same); Stein Decl. Ex. A at 1 (same). Plaintiffs' admission

A FOIA requester may modify their request during the administrative stage.   5 U.S.C. § 552(a)(6)(B)(ii).  However, "[n]o statute requires a court to allow FOIA modifications during the course of litigation."  *Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement*, No. 16-cv-387 (KBF), 2017 U.S. Dist. LEXIS 66429, at \*35 (S.D.N.Y. Aug. 19, 2017) (rejecting "plaintiffs' attempt to unilaterally narrow their request" in brief opposing summary judgment) (quotation marks and citation omitted); *see also Women's Action Network v. DOD*, No. 11-cv-1534, 2013 U.S. Dist. LEXIS 37655, at \*5, 8 (D. Conn. Mar. 19, 2013) (rejecting unilateral narrowing of FOIA request where plaintiffs indicated, in opposition to motion for summary judgment, that they were willing "to settle their complaint and limit their request to a far smaller number of key documents"); *Serv. Women's Action Network v. DOD*, 570 Fed. App'x. 54, 57 (2d Cir. 2014) (observing that "it is doubtful whether permitting FOIA litigants to narrow their requests at will in the midst of ongoing litigation would not itself destroy the 'prompt' and 'efficient' disclosure of government records, as litigants continually test the permissible breadth of their requests").

It is far too late—almost a year after Plaintiffs submitted the FOIA Requests, months after initiating this lawsuit, and only ***after*** Defendants filed their motion for summary judgment—to remake Plaintiffs' FOIA Requests.  Criminal Division, DEA, and State responded to Plaintiffs' FOIA Requests in the belief that Plaintiffs were seeking the requested records in their entirety, and Defendants prepared their summary judgment brief with this framework in mind.  This is especially important because Defendants issued and argued *Glomar* positions, the propriety of which must be assessed in the context of the as-submitted FOIA Requests.  This is not a case where, for example, a requester reduces the scope of its request to lower the burden on an agency when responsive records have already been acknowledged.  Rather, Defendants' *Glomar* positions were taken and argued based on the FOIA Requests as written.  Even though *Glomar* positions would still be justified in response to the narrowed version of the FOIA Requests urged by Plaintiffs (*see infra* Part I.D.1), Plaintiffs' efforts to change the rules of the road at this late stage are inefficient, unfair, and procedurally improper.

---

that the records "were compiled for law enforcement purposes" renders Plaintiffs' case a nullity.  Plaintiffs cannot submit FOIA Requests specifically excluding a whole class of information and then concede that the records purportedly at issue all fall within that excluded class of information.

1   Plaintiffs' failed revision of their FOIA Requests results in them failing to oppose Defendants'

2   Exemptions (b)(6) and (b)(7)(C) arguments.  While Defendants moved for summary judgment based on

3   the actual FOIA Requests, Plaintiffs premise their opposition on non-existent, narrowed FOIA requests

4   and calibrate their arguments accordingly.  Pls.' Br. at 16-18 (asserting the FOIA Requests seek "heavily-

5   redacted" information in purporting to balance private and public interests).  Indeed, Plaintiffs even state

6   that "Exemptions 6 and 7(C) [d]o [n]ot [a]pply [b]ecause Plaintiffs [a]gree to [s]ubstantial [r]edaction."

7   Pls.' Br. 16.  By failing to address Defendants' arguments about why the as-submitted FOIA Requests

8   justified *Glomar* responses, Plaintiffs have conceded this point.  *See Mariscal v. Graco, Inc.*, 52 F. Supp.

9   3d. 973, 984 (N.D. Cal. 2014) (plaintiff's failure to address defendant's arguments in plaintiff's opposition

10  to motion for summary judgment conceded defendant's claims).

    **D.    Under Exemptions (b)(6) And (b)(7)(C), The *Pablo Vega Cuevas* Defendants Have Strong Privacy Interests And Any Countervailing Public Interests Are Insufficient**

        **1.    Even If Plaintiffs' Unilateral Narrowing Of Their FOIA Requests Was Effective, It Would Not Eliminate The *Pablo Vega Cuevas* Defendants' Strong Privacy Interests, Which Justify Defendants' *Glomar* Responses**

15  Plaintiffs argue that their attempted unilateral narrowing of the FOIA Requests somehow

16  eliminates the privacy interests of the *Pablo Vega Cuevas* defendants.  *See* Pls.' Br. at 17 ("Given that the

17  only material disclosed would be blacked-out documents with subject headings and dates revealed, there

18  is no reason that the information sought here would disclose intimate details of an individual defendant's

19  life, triggering Exemptions 6 and 7(C).").[4]  Plaintiffs are wrong.

20  At the outset, in support of their proposition that "Exemptions 6 and 7(C) only 'protect intimate

21  details of personal and family life,'"  Pls.' Br. at 16 (quoting *Sims v. CIA*, 642 F.2d 562, 575 (D.C. Cir.

22  1980)), Plaintiffs mischaracterize case law that, in any event, is not applicable in this Circuit.  Plaintiffs'

23  summary of D.C. Circuit law is dubious since the D.C. Circuit has subsequently clarified that private

24  information "includes the prosaic (*e.g.*, place of birth and date of marriage) as well as the intimate and

25  potentially embarrassing."  *Painting & Drywall Work Preservation Fund v. HUD*, 936 F.2d 1300, 1302

_____

[4] Even if Plaintiffs' proposed privacy standard is correct (and it is not), Plaintiffs' assertion that subject headings would not "disclose intimate details of an individual defendant's life" is highly speculative—subject headings routinely contain a concise summary of the contents of a document and often include intimate, non-public details in summary format.

(D.C. Cir. 1991).  But more importantly, this statement of law finds no support in Ninth Circuit case law, which governs this case.  *See, e.g.*, *Rojas v. FAA*, 941 F.3d 392, 405 (9th Cir. 2019) (holding, under Exemption (b)(6), that establishing a cognizable privacy interest "is not a demanding standard" and that a "disclosure implicates a cognizable privacy interest if it affects either the individual's control of information concerning his or her person . . . or would possibly expose the individual to harassment") (citations and quotation marks omitted).  Indeed, in the Ninth Circuit, a disclosure that implicates "nontrivial" or more than "de minimis" privacy interests is cognizable under Exemption (b)(6). *Cameranesi v. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017) ("Disclosures that would subject individuals to possible embarrassment, harassment, or the risk of mistreatment constitute nontrivial intrusions into privacy under Exemption 6.").  And, under Exemption (b)(7)(C), protectable privacy interests arise out of "a broad range of concerns relating to an 'individual's control of information concerning his or her person,' and an 'interest in keeping personal facts away from the public eye.'" *Lahr v. NTSB*, 569 F.3d 964, 974 (9th Cir. 2009); *see also id.* ("[T]he concept of personal privacy under Exemption 7(C) is not some limited or cramped notion of that idea.") (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165 (2004)).  Thus, Plaintiffs' proposed "disclos[ure] of intimate details" standard is not only unsupported by Ninth Circuit law, it also suggests a legally inappropriate threshold for protectable privacy interests.

With the proper threshold for protectable privacy interests in mind, Plaintiffs' improper narrowing of the FOIA Requests still fails to address the core argument justifying Defendants' *Glomar* responses: to the extent Defendants are forced to confirm or deny the existence of *any* responsive records (let alone release responsive records, even in redacted format), they would violate the *Pablo Vega Cuevas* defendants' strong privacy interests.  Here, merely acknowledging the existence of responsive records would harm the *Pablo Vega Cuevas* defendants' privacy interests by possibly associating them with criminal organizations and activities beyond those that have been officially acknowledged and triggering questions about the extent to which they were implicated by the Mexican Government's alleged investigation.  Stein Decl. ¶ 24; Hertel Decl. ¶ 27; Cunningham Decl. ¶¶ 25, 33-34; *see also Schiffer v. FBI*, 78 F.3d 1405, 1410 (9th Cir. 1996) ("[P]ersons named in . . . documents, as well as those who provided the information contained in them, have a strong interest in 'not being associated unwarrantedly

with alleged criminal activity."); *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (holding that the mere "'mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation'") (quoting *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987)). Thus, Defendants prominently argued in their summary judgment motion that merely acknowledging responsive records would violate the eight *Pablo Vega Cuevas* defendants' privacy interests. Defs.' Br. at 18-19. Plaintiffs failed to address this core argument, and the point is, therefore, conceded. *See Citizens for Free Speech, LLC v. County Of Alameda*, No. C 18-00834 SBA, 2019 U.S. Dist. LEXIS 234441, *15 n.8 (N.D. Cal. Jan. 14, 2019) (citing *Recycle for Change v. City of Oakland*, 856 F.3d 666, 673 (9th Cir. 2017) and *Mariscal*, 52 F. Supp. 3d. at 984) (plaintiffs conceded argument by not addressing it)).

Substantively, Plaintiffs' attempt to seek only partially redacted records would not eliminate these strong privacy interests. For one thing, to the extent responsive records exist (a fact which Defendants have never confirmed or denied), the *Pablo Vega Cuevas* defendants' names could appear in subject headings of responsive records, and release of those headings would clearly violate the *Pablo Vega Cuevas* defendants' privacy interests. And, even if the *Pablo Vega Cuevas* defendants' names would not appear in the subject headings, releasing responsive records, even in redacted format, or even acknowledging their existence, would necessarily undermine the *Pablo Vega Cuevas* defendants' privacy interests by associating them with a law enforcement investigation in Mexico. *Schiffer*, 78 F.3d at 1410. Further, there are only eight defendants in the criminal case *Pablo Vega Cuevas*, and any records released in this lawsuit—even if the records do not disclose specific names—would "engender comment and speculation" and have a "stigmatizing" impact on those eight defendants. *Fitzgibbon*, 911 F.2d at 767. In short, the *Pablo Vega Cuevas* defendants have a strong privacy interest in not being associated with alleged criminal activity, and Plaintiffs' proposed narrowing does nothing to alleviate those privacy concerns.

## 2. The Public Interests Identified By Plaintiffs Are Irrelevant Or Minimal

Plaintiffs' brief identifies two purported public interests in the requested information, namely (1) "what the United States and Mexican governments' responses were to the disappearance of the 43 students in Iguala, Mexico;" and (2) "showing that the United States is complying with its treaty obligations and cooperating with international investigations . . . ." Pls.' Br. at 18. The first alleged public

1   interest is irrelevant in this FOIA lawsuit, and the second alleged public interest is insufficient to overcome

2   the *Pablo Vega Cuevas* defendants' strong privacy interests.

3   The first line in Plaintiffs' brief contends that "Plaintiffs make a limited request for records seeking

4   to keep not just one but *two* governments accountable for their responses to the 2014 disappearance of 43

5   Mexican students." Pls.' Br. at 1 (emphasis in original); *see also id.* at 18 (same). This assertion

6   misunderstands the role of the FOIA. There is no public interest under the FOIA in keeping the **Mexican**

7   **Government** accountable, and the FOIA provides Plaintiffs no cause of action to ascertain what **Mexico**

8   did in response to the Ayotzinapa disappearance. *See, e.g.*, *Lahr*, 569 F.3d at 974 ("[T]he **only** relevant

9   public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought

10  would shed light on an agency's performance of its statutory duties or otherwise let citizens know what

11  their government is up to.") (quotation marks and citation omitted) (emphasis in original); *Phillips v. ICE*,

12  385 F. Supp. 2d 296, 305 (S.D.N.Y. 2005) (observing that, although privacy interests of government

13  officials may be lessened by countervailing public interest, that idea "would appear to be inapplicable to

14  former foreign government officials"); *Landano v. DOJ*, 956 F.2d 422, 430 (3d Cir. 1992) (there is "no

15  FOIA-recognized public interest in discovering wrongdoing by a state agency"), *rev'd & remanded on*

16  *other grounds*, 508 U.S. 165 (1993). Further, the purported public interest in discovering the United

17  States' response to the Ayotzinapa disappearances is not consistent with the FOIA Requests at issue, which

18  instead seek information regarding the criminal case *Pablo Vega Cuevas*. Plaintiffs logically cannot

19  invoke a public interest unrelated to their FOIA Requests.

20  The only public interest identified by Plaintiffs that could possibly be construed as having any

21  validity is to discover whether "the United States is complying with its treaty obligations and cooperating

22  with international investigations . . . ." Pls.' Br. at 18. This interest, however, is grossly insufficient to

23  outweigh the strong privacy interests at stake. First, to the extent Plaintiffs seek information regarding

24  the United States' compliance with its "treaty obligations," that information is categorically protected

25  from disclosure pursuant to Exemption (b)(3), as discussed above and in Defendants' summary judgment

26  motion. *See, e.g.*, *supra* Parts I.A-B. Second, this Court has previously held in a similar case that a general

27  interest of "understanding how law enforcement policy [was] carried out" did not outweigh third-party

28  privacy interests. *Anguiano v. United States Immigration and Customs Enforcement*, No.18-cv-01782-

1   JSC, 2018 U.S. Dist. LEXIS 193479, *31-32 (N.D. Cal. Nov. 13, 2018) (J. Corley, presiding).  Plaintiffs

2   attempt to distinguish *Anguiano*, arguing that this case is "more akin" to the "wide-ranging investigation"

3   in *CREW*.  Pls.' Br. at 18 n.6.  But, this Court also reviewed the *CREW* decision in *Anguiano* and was not

4   convinced that *CREW* mandated a different result, citing in part that the relevant *CREW* documents related

5   to "a wide-ranging public corruption investigation as part of [the FBI's] ongoing efforts to root out

6   systemic corruption within the highest levels of [the United States'] government."  *Anguiano*, 2018 U.S.

7   Dist. LEXIS 193479, *31-32 (citation omitted).

8        The Court should reach the same conclusion here that it did in *Anguiano*—this case involves

9   requests for assistance regarding the criminal case *Pablo Vega Cuevas* (not the wide-ranging investigation

10  of the Ayotzinapa disappearance).  Plaintiffs make no showing of misconduct on the part of Defendants

11  or any other component of the United States Government sufficient to overcome the privacy interests at

12  stake.  *See id.*; *see also Lahr*, 569 F.3d at 978 (citing "unveiling agency misconduct" as a countervailing

13  public interest that may outweigh privacy interests); *accord Favish*, 541 U.S. at 174 (holding that "where

14  there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show

15  that responsible officials acted negligently or otherwise improperly in the performance of their duties, the

16  requester . . . must produce evidence that would warrant a belief by a reasonable person that the alleged

17  Government impropriety might have occurred").  Despite asserting that "[q]uestions of accountability are

18  not limited to the Mexican government, but fairly extend to the U.S. involvement in this case," Plaintiffs

19  articulate no credible impropriety by the United States, much less produce sufficient evidence of an

20  impropriety to overcome the significant privacy interests at stake.  Pls.' Br. at 4.  For example, Plaintiffs

21  do not demonstrate how the smattering of alleged urgings from various members of Congress for the

22  United States to cooperate with Mexico's investigation of the Ayotzinapa case—urgings that are devoid

23  of any mention of the criminal case *Pablo Vega Cuevas*—shows any alleged impropriety by the United

24  States Government.  *Id.* at 4-5.

25  **II.   Plaintiffs' Invocation Of The Official Acknowledgment Doctrine Is Legally Incorrect And**

26  **Factually Misleading**

27        Plaintiffs argue, in the alternative, that the official acknowledgment doctrine requires disclosure

28  of the records at issue in this lawsuit.  However, the evidence submitted by Plaintiffs fails to meet

1    Plaintiffs' burden because Plaintiffs do not—and cannot—demonstrate that any of the purported official

2    acknowledgments came from Defendants in this case (*i.e.*, Criminal Division, DEA, EOUSA—or the

3    Department of Justice in general—and/or State).  Further, none of the purported disclosures identified by

4    Plaintiffs demonstrate that the information sought in this lawsuit is already within the public sphere.

5    Accordingly, Plaintiffs are legally and factually wrong (and courts in the Northern District of California

6    have rejected practically identical official acknowledgment arguments made by the Center for

7    Investigative Reporting ***in at least two other cases in the past four months alone***, *see, e.g.*, *Ctr. for*

8    *Investigative Reporting v. FBI*, No. 19-cv-04541-LB, 2021 U.S. Dist. LEXIS 31531 (N.D. Cal. Feb. 18,

9    2021) and *Ctr. for Investigative Reporting v. United States Dep't of the Treasury*, No. 19-cv-08181-JCS,

10   2021 U.S. Dist. LEXIS 13575 (N.D. Cal. Jan. 22, 2021)).

11          As this Court has observed, "official acknowledgements must meet three criteria to waive a FOIA

12   exemption:  (1) 'the information requested must be as specific as the information previously released;'

13   (2) 'the information requested must match the information previously disclosed;' and (3) 'the information

14   requested must already have been made public through an official and documented disclosure.'" *Bothwell*

15   *v. CIA*, No. 13-cv-05439-JSC, 2014 U.S. Dist. LEXIS 144151, at *38 (N.D. Cal. Oct. 9, 2014) (J. Corley,

16   presiding) (quoting *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (discussing the official

17   acknowledgment doctrine in a *Glomar* case); *see also Ctr. for Investigative Reporting v. FBI*, 2021 U.S.

18   Dist. LEXIS 31531, at *10-11 (holding that "the Indonesian police records . . . are not an official disclosure

19   by the FBI").  Once an agency has established that a FOIA exemption applies, "'a plaintiff asserting that

20   information has been previously disclosed bears the initial burden of pointing to specific information in

21   the public domain that duplicates that being withheld.'"  *Elec. Frontier Found. v. DOJ*, No. 4:11-cv-

22   05221-YGR, 2014 U.S. Dist. LEXIS 110785, at *16 (N.D. Cal. Aug. 11, 2014) (quoting *Public Citizen v.*

23   *Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993)).  The official acknowledgement test "is a stringent one

24   and presents a 'high hurdle for a FOIA plaintiff . . . [as the] Government's vital interest in information

25   relating to national security and foreign affairs dictates that it must be.'"  *Id.* (quoting *Public Citizen*, 11

26   F.3d at 203).

27

28

1

2

**A.     Third-Party Disclosures Are Legally Insufficient To Invoke The Official Acknowledgment Doctrine**

3

4

5

6

7

8

Plaintiffs point to purported disclosures by Mexico and U.S. Members of Congress, as well as the United States' alleged historical practice regarding MLAT agreements with other countries, in support of their official acknowledgment contentions.  Vitally, Plaintiffs never allege that Defendants in this case have officially acknowledged the existence of responsive records.  As both a legal and factual matter, the alleged third-party disclosures identified by Plaintiffs fall far short of the "high hurdle" Plaintiffs face. *Elec. Frontier Found.*, 2014 U.S. Dist. LEXIS 110785, at *16 (quoting *Public Citizen*, 11 F.3d at 203).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

It is black-letter law that an official acknowledgment must come from the agency withholding the requested information (here, Criminal Division, DEA, EOUSA—or the Department of Justice in general—and/or State).  *See, e.g.*, *Ctr. for Investigative Reporting v. FBI*, 2021 U.S. Dist. LEXIS 31531, at *11 ("A plaintiff must identify an intentional, public disclosure ***made by or at the request of a government officer acting in an authorized capacity by the agency in control of the information at issue*** . . . that is as specific as the information previously released.") (quotation marks omitted) (emphasis added).  Third-party releases are insufficient as a matter of law to act as a waiver of Defendants' Exemption (b)(3), (b)(6), and (b)(7)(C) assertions.  *ACLU Found. v. DOJ*, 418 F. Supp. 3d 466, 477 (N.D. Cal. 2019) ("[T]he Court finds that the weight of authority suggests that the ACLU cannot seek disclosure of the FBI's policies based on other agencies having disclosed their own policies, together with acknowledgement that they share information with the FBI."); *see also id.* ("[C]ourts have declined to 'infer official disclosure of information . . . [from the] release of information by another agency, or even by Congress.'" (quoting *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009)); *Public Citizen*, 11 F.3d at 201 ("[E]ven if a fact has been the subject of media speculation, its official acknowledgment could damage national security."); *Dongkuk Int'l, Inc. v. United States DOJ*, 204 F. Supp. 3d 18, 29 (D.D.C. 2016) ("[A] foreign government disclosure does not qualify as an 'official and documented' disclosure under the official-acknowledgment test").  Thus, alleged third-party disclosures from Mexico and U.S. Members of Congress, even if substantively applicable to this case, are wholly irrelevant to Plaintiffs' official acknowledgment arguments.

28

Judge Beeler rejected an almost identical argument (in a non-*Glomar* case) from the Center for Investigative Reporting just two months ago.  *See Ctr. for Investigative Reporting v. FBI*, 2021 U.S. Dist. LEXIS 31531.  In that case, the Center for Investigative Reporting sought release of records from the FBI under the official acknowledgment doctrine, contending that Congressional statements, news reports, academic literature, Wikileaks articles, and alleged Indonesian Government disclosures were official acknowledgments of records maintained by the FBI.  Judge Beeler unequivocally found that these third-party statements were not official acknowledgements by the FBI, holding "documents leaked by others are not an intentional public disclosure.  Similarly, the Indonesian police records . . . are not an official disclosure by the FBI."  *Id.* at 12 (citation omitted).  Here, just like in *Center for Investigative Reporting v. FBI*, alleged disclosures by the Mexican Government and U.S. Members of Congress are not, as a matter of law, official acknowledgements by Criminal Division, DEA, EOUSA (or the Department of Justice more broadly), and/or State.  Based upon all publicly known and available information, the official acknowledgement doctrine is inapplicable.

**B.**     **The Documents Introduced By Plaintiffs Do Not Match The Information Sought By The FOIA Requests**

Even if the third-party disclosures identified by Plaintiffs could somehow be characterized as an official acknowledgment by Defendants, they still do not demonstrate that "the information requested . . . match[es] the information previously disclosed . . . ."  *Bothwell*, 2014 U.S. Dist. LEXIS 144151, at *38.  As discussed in significant detail above, Plaintiffs introduce no evidence that the Mexican Government disclosed the existence of requests for assistance regarding the criminal case *Pablo Vega Cuevas*; instead, Plaintiffs' evidence suggests, at most, that the Mexican Government sought assistance regarding the Ayotzinapa disappearance, and that is not the information requested by the FOIA Requests.  *See id.* ("[T]he information requested must match the information previously disclosed.").  Further, the statements by U.S. Members of Congress disclose neither (1) that Mexico sought assistance regarding the criminal case *Pablo Vega Cuevas*; nor (2) that the United States actually provided assistance regarding the criminal case *Pablo Vega Cuevas*.  Instead, the Congressional statements "urged . . . engagement," "wrote [their belief] . . . that U.S. investigative and financial support for these initiatives . . . can be beneficial," and "call[ed] on our Departments of State and Justice to support Mexican authorities in their work to resolve

the case of the 43 students."  Pls.' Br. at 20; *see also id.* at 4-5 (similar).  These aspirational and advisory Congressional statements—not about the *Pablo Vega Cuevas* case, but instead about the Ayotzinapa disappearance—do not acknowledge the existence of any collaboration between Defendants and the Mexican Government, much less disclose information that matches the information now requested by Plaintiffs.  *Bothwell*, 2014 U.S. Dist. LEXIS 144151, at *38.

Judge Spero rejected a similar public domain argument by the Center for Investigative Reporting only a few months ago.  *See Ctr. for Investigative Reporting v. United States Dep't of the Treasury*, 2021 U.S. Dist. LEXIS 13575, at *18-22.  In that case, the Center for Investigative Reporting argued that various reporting laws unrelated to those at issue in that case required public disclosure of certain information. The Center for Investigative Reporting, however, failed to submit any records resulting from any of those laws demonstrating that the information collected by the defendant agency contained the specific information allegedly placed in the public domain under the various reporting laws.  *Id.* at 20-21.  Judge Spero found that the Center for Investigative Reporting failed to meet "its burden to identify ***specific*** information in the public domain that appear[ed] to duplicate that being withheld . . . ."  *Id.* at 21 (quotation marks and citation omitted) (emphasis in original).  Here, Plaintiffs similarly fail to meet their burden— the disclosures by the Mexican Government and U.S. Members of Congress do not duplicate the information sought by Plaintiffs' FOIA Requests (or hint at "the existence *vel non* of any [responsive] records").[5]  Pls.' Br. at 19 (quoting *ACLU v. CIA*, 710 F.3d 422, 426-27 (D.C. Cir. 2013)); *see also Ctr. for Investigative Reporting v. United States Dep't of the Treasury*, 2021 U.S. Dist. LEXIS 13575, at *21; *Bothwell*, 2014 U.S. Dist. LEXIS 144151, at *38.

Finally, Plaintiffs observe that the United States Government has disclosed other requests for assistance under MLAT agreements with other countries, arguing that the United States Government's conduct—in these different factual circumstances, under different international treaties—somehow

---

[5] Lest there be any doubt, it is Plaintiffs' burden—in the first instance—"to point to specific information in the public domain that appears to duplicate that being withheld."  *Cottone v. Reno*, 193 F.3d 550, 554-555 (D.C. Cir. 1999) (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983) (quotation marks, alterations, and citations omitted).  "Were it otherwise, the government would face the daunting task of proving a negative."  *Cottone*, 193 F.3d at 554-555.  But proving the negative is not something Defendants are required to do.

DEFENDANTS' REPLY ISO MSJ AND OPPOSITION TO PLAINTIFFS' CROSS-MSJ
NO. 3:20-CV-06649-JSC                              16

"demonstrates that the information that CIR has requested has already 'been made public through an official and documented disclosure.'" Pls.' Br. at 20 (quoting *Fitzgibbon*, 911 F.2d at 765). This assertion is so far afield from the official acknowledgment doctrine that it merits little discussion. It would be absurd to conclude that Defendants in this case have officially acknowledged the existence of requests for assistance from Mexico regarding the criminal case *Pablo Vega Cuevas* simply because the American Embassy in Switzerland described a Swiss MLAT request in 1997, the American Embassy in Honduras described a Honduran MLAT request in 2004, and the State Department referenced an MLAT request from Guatemala in 2010. Pls.' Br. at 20-21. The United States' MLAT agreements with other countries are unique and must stand on their own merits, especially concerning particular language related to issues of confidentiality. The only contention in this section of Plaintiffs' brief that merits any discussion is Plaintiffs' apparent belief that because the United States Government did not assert a *Glomar* response in either *Dongkuk* or *Grynberg*, it cannot do so in this case. Pls.' Br. at 21-22 (citing *Dongkuk*, 204 F. Supp. 3d 18 and *Grynberg* v. *United States DOJ*, 302 F. Supp. 3d 532 (S.D.N.Y. 2018)). But the non-*Glomar* outcomes in *Dongkuk* and *Grynberg* are easily distinguishable on the facts, since they were premised on different confidentiality obligations under the United States' international treaties with South Korea and Switzerland, respectively. In *Dongkuk*, Korean prosecutors had already disclosed the existence of the MLAT communication during a public criminal trial. *Dongkuk*, 204 F. Supp. 3d at 23. Even if a foreign government's pronouncements were relevant (and they are not), there is no record evidence the Mexican Government has done the same here, and a *Glomar* response is appropriate. And, in *Grynberg*, the United States, not Switzerland, was the entity submitting a request for assistance. *Grynberg*, 302 F. Supp. 3d 539. Here, in contrast, the U.S.-Mexico MLAT requires Defendants to keep the existence of Mexico's request for assistance (if any) confidential. U.S.-Mexico MLAT, Art. 4 § 5. Defendants therefore have no choice but to issue a *Glomar* response to that aspect of Plaintiffs' FOIA Requests.

### III. Plaintiffs' FOIA Request To EOUSA Does Not Reasonably Describe The Records Sought And Does Not Comply With EOUSA's Regulations And Guidance

Even assuming the EOUSA Request is properly before this Court, it fails for the reasons articulated by Criminal Division, DEA, and State. Thus, the Court need not expend judicial resources addressing in depth the propriety of the EOUSA Request. To the extent the Court is inclined to do so, however, the

1   EOUSA Request is not properly before the Court because it does not adequately describe the records

2   sought and it does not comply with EOUSA's regulations and guidance.

3         First, Plaintiffs allege that the EOUSA Request reasonably describes the records sought because

4   Plaintiffs "provided the specific caption and docket number for the relevant case.  Surely, this information

5   would have allowed the EOUSA to establish that the relevant jurisdiction was the North [sic] District of

6   Illinois."  Pls.' Br. at 24.  But, there is nothing inherent to the *Pablo Vega Cuevas* case caption or docket

7   number that indicates the EOUSA Request sought records from the Northern District of Illinois.  Indeed,

8   to identify in which of EOUSA's 93 records systems the *Pablo Vega Cuevas* records would have been

9   stored, EOUSA staff would have had to engage in a research project, individually searching 93 different

10  records systems.  Smith Decl. ¶ 10.  The FOIA does not require agencies to be full-time investigators on

11  behalf of FOIA requesters, nor does it require an agency's FOIA staff to have "clairvoyant capabilities"

12  to discern the requester's needs.  *Bloeser v. DOJ*, 811 F. Supp. 2d 316, 321 (D.D.C. 2011); *Nurse v. Sec'y*

13  *of the Air Force*, 231 F. Supp. 2d 323, 330 (D.D.C. 2002).  Indeed, the burden on EOUSA if all FOIA

14  requesters provided similarly non-descript FOIA requests would be astounding, since EOUSA's

15  14-attorney staff must process and close approximately 4,000 FOIA requests and referrals each year.

16  Smith Decl. ¶ 4.

17        Second, EOUSA has taken great pains to enact regulations and guidance governing the submission

18  of proper FOIA requests.  EOUSA has done this to ease its administrative burdens and to avoid the issues

19  now faced by Plaintiffs.  Smith Decl. ¶ 10.  Plaintiffs are sophisticated institutional FOIA requesters, and

20  they surely know how to access and review the publicly available FOIA regulations and guidance on

21  EOUSA's webpage.[6]  Contrary to Plaintiffs' suggestion, there is nothing "burdensome" to indicating the

22  judicial district or city in which *Pablo Vega Cuevas* was handled.  *See* Pls.' Br. at 23 (contending that

23  "requiring such precision [*i.e.*, specifying the judicial district or city] would be unduly burdensome for the

24  requester").  Plaintiffs surely knew where *Pablo Vega Cuevas* was being handled when they submitted

25  the EOUSA Request; they just decided not to include that information.  Plaintiffs' decision to ignore

26  EOUSA's regulations and guidelines—either because Plaintiffs did not review the regulations and

27

28  _____
    [6]  *See also*  https://www.foia.gov/?id=57fbedf0-cef4-46e8-8a3c-bfece4efc69c&type=component  (last
    visited 05/01/2021).

1  guidance in advance or because Plaintiffs considered them merely precatory—is a risk Plaintiffs took on

2  when they submitted a non-compliant FOIA request.  The EOUSA Request clearly does not comply with

3  EOUSA regulations and guidance, and, therefore, is not properly before this Court.  *Antonelli v. ATF*, No.

4  04-1180, 2006 U.S. Dist. LEXIS 3156, at *8 (D.D.C. Mar. 17, 2006) (granting agency's motion for

5  summary judgment because requester failed to comply with agency regulation requiring sufficient

6  description of records sought in order that agency "with a reasonable amount of effort . . . [could] initiate

7  a search" from among more than 100 systems of records).

8  **IV.    Conclusion**

9         For the reasons in this combined reply in support of Defendants' motion for summary judgment

10  and opposition to Plaintiffs' cross-motion for summary judgment, the Court should enter summary

11  judgment in favor of Defendants and deny Plaintiffs' cross-motion for summary judgment.[7]  In the

12  alternative, in the event the Court denies summary judgment for Defendants in whole or in part,

13  Defendants should be afforded an opportunity to search for any responsive documents as deemed proper

14  by this Court and assert any appropriate exemptions, as opposed to Plaintiffs' suggestion that this Court

15  simply "order disclosure of the records."  Pls.' Br. at 4.

16  DATED:  May 6, 2021                          Respectfully submitted,

17

18                                              STEPHANIE M. HINDS
                                                Acting United States Attorney

19                                              */s/ Jevechius D. Bernardoni*
20                                              JEVECHIUS D. BERNARDONI
                                                Assistant United States Attorney

21                                              Attorneys for Defendants

22

23

24

25

26

27

28  _____
[7] Because this is a reply as well as an opposition, the limit for this brief is 25 pages.  *See* Civil Local Rule 7-3(a).